**FLORIDA EVERGREEN FOLIAGE and Louis Chang, Plaintiffs,**

v.

**E.I. Du PONT De NEMOURS AND COMPANY, Defendant.**

**Steven J. Gutter, et al., Plaintiffs,**

v.

**E.I. Dupont de Nemours, et al., Defendants.**

Nos. 98–2256–Civ, 98–2242–Civ, 98–2243–Civ, 98–2244–Civ, 98–2245–Civ, 98–2246–Civ, 98–2247–Civ, 98–2248–Civ, 98–2249–Civ, 98–2254–Civ, 99–7042–Civ, 99–7043–Civ, 99–7217–Civ, 99–7228–Civ, 99–7229–Civ, 00–2771–Civ, 00–2772–Civ, 00–2773–Civ, 97–0059–Civ, 99–0336–Civ, 95–2152–Civ.

United States District Court, S.D. Florida.

March 8, 2001.

Sean L. Moore, Fort Lauderdale, FL, Thomas A. Pendarvis, A. Camden Lewis, Lewis Babcock & Hawkins, Columbia, SC, David W. Moyer, Stephen T. Cox, Cox & Moyer, San Francisco, CA, for Florida Evergreen Foliage, Louis Chang.

Edward A. Moss, Thomas Emerson Scott, Jr., Shook Hardy & Bacon, Miami, FL, William H. Boice, A. Stephens Clay, James F. Bogan, III, Kilpatrick Stockton, Atlanta, GA, Alice Guyton Hector, Lance August Harke, Harke & Clasby, Miami, FL, for E.I. DuPont De Nemours and Company.

### ORDER ON DUPONT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS

GOLD, District Judge.

THIS CAUSE is before the Court upon the following motions:

- *DuPont's Motion for Judgment on the Pleadings As to All Damages Claims Based on Litigation Conduct,*[1] filed on September 20, 2000, along with a separate supporting brief. Plaintiffs filed an *Opposition* on October 19, 2000, which also included a *Request for Judicial Notice*. DuPont filed a Reply on November 7, 2000.

- *DuPont's Motion for Judgment on the Pleadings Based on Plaintiff's Inability to Establish Reasonable Reliance as a Matter of Law,* filed on October 10, 2000, along with a supporting brief. Plaintiffs filed a *Memorandum in Opposition to DuPont's Motion for Judgment on the Pleadings* on October 26, 2000, and DuPont filed a *Reply Memorandum* on November 20, 2000.

Oral arguments were held on December 20, 2000, after which the Court requested supplemental memoranda from the parties.[2] Thereafter supplemental memoranda were filed by all the parties on January 16, 2001, and responses to the supplemental memoranda were filed on February 2, 2001.

DuPont seeks dismissal of this action pursuant to Federal Rule of Civil Procedure 12(c).[3] After careful consideration of the parties' arguments, the applicable case law, and the record as a whole, the Court concludes that both DuPont's Motion for Judgment on the Pleadings As to All Damages Claims Based on Litigation Conduct and DuPont's Motion for Judgment on the Pleadings Based on. Plaintiff's Inability to Establish Reasonable Reliance as a Matter of Law should be granted in part and denied in part. Furthermore, as explained in the conclusion of this Order, the Court certifies that an interlocutory appeal by either or both parties is appropriate as to this Order.

## I. Background

The First Amended Complaint [D.E. 2], filed on October 22, 1998, contains thirteen claims for relief, as follows: Count 1, fraud; Count 2, intentional nondisclosure of material facts; Count 3, fraudulent inducement to settle; Count 4, fraud on the court under Fed.R.Civ.P. 60(b); Count 5, rescission and damages for fraud; Count 6, racketeering in violation of 18 U.S.C. § 1962(c); Count 7, violation of 18 U.S.C.

---

1. Both motions for judgment on the pleadings were filed as case-specific pleading in Case No. 98–2256–CIV–GOLD. Case No. 98–2256–Civ–Gold is currently one of 34 related pending cases before this Court. DuPont is a defendant in 25 of these cases, including Case No. 98–2256–Civ–Gold, and a plaintiff in nine others. Notwithstanding these differences, all of the cases are essentially the same. The Court has generally referred to the Claimant Growers as "Plaintiffs" and DuPont as "Defendant," and will do so in this Order.

2. The supplemental memoranda were primarily on the issues of reasonable reliance and a potential common issues trial. This order does not address the propriety of a common

issues trial or any of the arguments of the parties related thereto.

3. Federal Rule of Civil Procedure 12(c) states:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

§ 1962(d) by conspiracy to violate 18 U.S.C. § 1962(c); Count 8, conspiracy; Count 9, abuse of process; Count 10, infliction of emotional distress; Count 11, interference with prospective economic advantage; Count 12, spoliation of evidence; and Count 13, violation of the Florida Deceptive and Unfair Trade Practices Act. Defendant DuPont filed a Counterclaim and Answer [D.E. 106] on May 24, 2000, and Plaintiffs filed an Answer to DuPont's Counterclaim [D.E. 114] on June 13, 2000. These pleadings were considered for purposes of resolving the pending motions, with all the ambiguities and inferences interpreted in the light most favorable to the Plaintiffs.

In order to understand the history of this case, it is necessary to discuss the underlying lawsuits and related proceedings that led to the present claims and the current disposition of the suit. In September 1992, Green Leaf Nursery, Inc. ("Green Leaf"), a Florida plant nursery, and its owner, Gus Pena ("Pena"), sued DuPont, asserting products liability claims based on property damage due to DuPont's fungicide Benlate and actual fraud claims based on DuPont's alleged concealment of Benlate's defects (the "Underlying Lawsuit"). *See* DuPont's Motion to Dismiss [D.E. 34], Exhibit 1 for a copy of the Complaint in the Underlying Lawsuit. Hundreds of similar Benlate lawsuits were brought by growers against DuPont and others in various parts of the United States. Green Leaf and Pena settled their claims with DuPont and executed a settlement agreement in favor of DuPont on May 25, 1994 (the "Settlement Contract" or "Settlement Agreement").

The settlement agreement states in paragraph 1 that:

In consideration of Defendant's [DuPont's] payment of the amount set forth in the authorization previously signed by Plaintiff[s] [Green Leaf & Pena], Plaintiff[s] hereby release[ ] Defendant from any and all causes of action, claims, demands, actions, obligations, damages, or liability, whether known or unknown, that Plaintiff[s] ever had, now ha[ve], or may hereafter have against Defendant, by reason of any fact or matter whatsoever, existing or occurring at any time up to and including the date this Release is signed (including, but not limited to, the claims asserted and sought to be asserted in the Action).

Settlement Contract ¶ 1. The settlement agreement also contained a choice of law provision in paragraph 15 stating that the release "shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to the choice of laws provisions thereof." Settlement Contract ¶ 15. On August 21, 1995, Judge Elliot issued an opinion in a related Benlate action, commonly called the *Bush Ranch* case, finding that DuPont had committed fraud on the court and imposing significant monetary sanctions on DuPont. *See In re E.I. du Pont de Nemours & Co.– Benlate Litigation*, 918 F.Supp. 1524 (M.D.Ga.1995), *rev'd*, 99 F.3d 363 (11th Cir.1996). On August 29, 1995, Plaintiffs dismissed the Underlying Lawsuit with prejudice pursuant to the May 25, 1994 Settlement.

The Amended Complaint to the action pending before this Court alleges that during the course of the litigation of the Underlying Lawsuit, DuPont wrongfully, illegally, and fraudulently withheld from discovery vital scientific data and information that DuPont was under an obligation to produce in the Underlying Suit and in other Benlate litigation being conducted simultaneously in other courts. Plaintiffs also allege that DuPont gave false testimony in other Benlate cases about Benlate's alleged defects and about scientific tests of

Benlate relating to such issues. Plaintiffs further allege that the data was material to establishing the allegedly defective and contaminated nature of Benlate. They claim that DuPont withheld this data and information and made false statements in implementation of a scheme to defraud Plaintiffs and others who had used Benlate and suffered resulting damage. Plaintiffs state that the fraudulent conduct began before September 1991 and continued through the filing of the present action in 1998. Plaintiffs were monitoring the Benlate litigation in other courts, and the effect of DuPont's scheme and fraud was to induce Plaintiffs to enter into the May 1994 settlement agreement with DuPont in this case for less money than they would have otherwise insisted upon and been able to obtain.

Prior to the filing of Case No. 98–2256–Civ–Gold, seven similar lawsuits were filed by commercial nurseries against DuPont and consolidated in front of Judge Lenard. *See* Case No. 97–0059–Civ–Gold (formerly 97–0059–Civ–Lenard).[4] Judge Lenard dismissed the cases under Fed.R.Civ.P. 12(b)(6) on the ground that the releases in the settlement agreements barred the fraudulent inducement claims. Because the choice-of-law provision in the settlement releases presented novel issues of Florida law, the Eleventh Circuit certified two questions to the Supreme Court of Florida. In response, the Supreme Court of Florida, on June 8, 2000, held that the choice-of-law provision in the settlement agreement controls the disposition of the claim that the agreement was fraudulently procured where the defrauded party has elected to affirm the contract and sue for damages, and that where Florida law applies, the release in these settlement agreements does not bar plaintiffs' fraudulent inducement claims. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,* 761 So.2d 306, 313 & 316 (Fla.2000). The Eleventh Circuit therefore reversed Judge Lenard's ruling and remanded the cases, but expressly stated that the district court should consider DuPont's arguments with regard to justifiable reliance upon remand. *See Mazzoni Farms, Inc. v. E.I. Dupont De Nemours and Co.,* 223 F.3d 1275, 1276 n. 2 (11th Cir.2000).

■ Meanwhile, upon a motion to dismiss in the consolidated cases before this Court, the question of whether the release in the settlement agreements bars plaintiffs' fraudulent inducement claims was certified to and accepted by the Supreme Court of Delaware. In an opinion issued on December 6, 1999, the Supreme Court of Delaware held that, under Delaware law, a tort claimant fraudulently induced to execute a release may opt either for rescission or a separate suit for fraud with damages calculated on the difference between that received under the release and the value of the settlement or recovery achieved had there been no fraud by the released party. *See E.I. DuPont De Nemours & Co. v. Florida Evergreen Foliage,* 744 A.2d 457, 458 (Del.1999).

## II. Standard of Review

Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law. *See Ortega v. Christian,* 85 F.3d 1521, 1524 (11th Cir.1996). When reviewing judgment on the pleadings, the court must take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.* at 1524. A

---

4. Upon remand, the cases that had been originally assigned to Judge Lenard were transferred to this Court in the interests of judicial economy due to the relatively advanced stage of these proceedings.

complaint may not be dismissed on a motion for judgment on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998). The pleadings considered by the court on a motion for judgment on the pleadings include the complaint, answers, counter-claim, and cross-claim, if any. *See Santmyer v. Prudential Ins. Co. of Am.,* 761 F.Supp. 114, 117 (M.D.Fla.1991).

## III. Discussion

### A. Which state law to apply?[5]

In the pleadings based on these motions, as well as other pleadings before this Court,[6] the parties have devoted considerable attention to whether Delaware or Florida substantive law should apply to Plaintiffs' state law tort claims. DuPont has advocated in favor of Florida law, whereas Plaintiffs maintain that Delaware law should be applied, despite the fact that the Amended Complaint states that it "alleges common law claims under the laws of the State of Florida." Amended Complaint ¶ 12. Upon a thorough review of the parties' arguments, the applicable case law, and the facts of this case, the Court concludes that DuPont has correctly stated that Florida law should be applied to Plaintiffs' tort claims.

In order to determine whether the choice of law provision in the settlement release agreement should be given effect, the court must look to the choice of law rules of the forum state, Florida. *See Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties agreement as to which law governs the construction of the contract is recognized under Florida law, unless the chosen law contravenes Florida public policy. *Coral Gables Imported Motorcars, Inc. v. Fiat Motors of North Amer., Inc.,* 673 F.2d 1234, 1238 (11th Cir.1982). The Florida Supreme Court has already decided in this case on the certified question from the Eleventh Circuit that the choice of law provision controls and that Delaware law should be applied to determine whether the release bars a fraudulent inducement claim. *Mazzoni Farms, Inc. v. E.I. DuPont,* 761 So.2d 306 (Fla.2000). The Supreme Court of Delaware in turn has held that the release in question does not block plaintiff's fraudulent inducement claim. *E.I. Du Pont v. Florida Evergreen Foliage,* 744 A.2d 457 (Del.1999).

However, the decisions by the Supreme Court of Florida and Supreme Court of Delaware were limited to interpreting the construction and effect of the release and choice of law language. Neither opinion focused upon what substan-

---

**5.** As noted in the background statement, the settlement agreement at issue in Case No. 98–2256–Civ–Gold contains a choice of law provision stating that the release "shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to the choice of laws provisions thereof." Settlement Contract ¶ 15. Not all of the settlement agreements in the related Benlate settlement fraud cases that are consolidated before this Court contain this choice of law provision. Where they do not, it is axiomatic that Florida law applies to the parties' substantive claims. *See Mazzoni Farms, Inc. v.*

*E.I. DuPont De Nemours & Co.,* 761 So.2d 306 (Fla.2000). For the agreements containing a Delaware choice of law provision, the analysis of which state's substantive to apply parallels the analysis set forth in this section.

**6.** See, e.g., *DuPont's Motion for Consolidation of Cases for a "Common Issues" Trial,* filed on October 10, 2000, and pleadings relating to this motion. The Court considered the arguments made in these related pleadings in deciding the choice of law issue.

tive law should be applied to the plaintiffs' tort claims, assuming they Were permitted to go forward. As Justice Hoeveler noted in 1992, even when a contract has a clause saying it shall be construed under and in accordance with the laws of a particular state, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision..... Rather, they are decided according to the law of the forum state." *Burger King Corp. v. Austin,* 805 F.Supp. 1007, 1012 (S.D.Fla.1992) (quoting *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,* 971 F.2d 401, 407 (9th Cir. 1992)). Florida utilizes the most significant relationship test to determine which state's law applies to tort claims. *Garcia v. Public Health Trust,* 841 F.2d 1062, 1064–65 (11th Cir.1988). In this case, all of the Claimant Plaintiffs are Florida corporations or individual citizens, the original state lawsuits in which Plaintiffs allege they were fraudulently induced to settle were brought in Florida, and the cases were settled in Florida. Florida therefore has the most significant relationship to the claims, and it is appropriate for the court to apply Florida law to the tort claims. Furthermore, the language in the release, upon a plain reading by the Court, is not broad enough to encompass tort claims. *See Sunbelt Veterinary Supply, Inc. v. International Business Systems,* 985 F.Supp. 1352, 1356 (M.D.Ala.1997). The language of the agreement states "This Release shall be governed and construed in accordance with the laws of the State of Delaware without giving effect to the conflict of laws or choice of law provisions thereof." The choice of law provision does not state that any and all claims arising out of the relationship of the parties shall be governed by Delaware law, or anything to that effect. The tort claims shall therefore be interpreted under Florida law.

### B. Litigation Conduct

DuPont argues that it is entitled to judgment on the pleadings as to all claims for damages asserted in the October 22, 1998 First Amended Complaint that are based on allegations of conduct alleged by the Plaintiffs to have taken place during the course of and related to any prior lawsuit. DuPont also asserts that it is entitled to judgment on the pleadings with respect to Count IV ("Fraud on the Court" and "Independent Action Recognized In FRCP Rule 60(b)") insofar as that count purports to assert any claim for damages. The bases for DuPont's motion are that (a) as a matter of Florida and Federal law, absolute immunity is afforded to litigation conduct in any subsequent civil action for damages, and (b) damages cannot be recovered under any "independent action" preserved by Fed.R.Civ.P. 60 or for "fraud on the court."

"Litigation conduct," as used in DuPont's motion for judgment on the pleadings as to all damages claims based on litigation conduct, refers to Plaintiff's allegations that in prior litigation DuPont failed to respond or issued improper responses to discovery, gave untruthful testimony, submitted improper or obstructive motions, committed misconduct during the litigation or trial of a case, disobeyed orders or stipulations entered in a lawsuit, and took false litigation positions. DuPont did not address Plaintiffs' allegations of spoliation of evidence and witness intimidation, or any other conduct that might be encompassed by Plaintiffs' general, non-particularized allegations, if they occurred apart from and unrelated to any prior lawsuit.

### 1. Florida Law: Counts One, Two, Three, Five, Eight, Nine, Ten, Eleven, & Thirteen

The principle case relied on by DuPont to support its argument that the state law

damage claims are barred by absolute immunity for litigation conduct is *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.,* 639 So.2d 606 (Fla.1994).

*Levin* was before the Supreme Court of Florida after the Eleventh Circuit Court of Appeals found that it was unclear whether Florida courts would extend the "litigation privilege" to actions based on tortious interference with a business relationship and certified the following question to the Supreme Court of Florida: "Whether certifying to a trial court an intent to call opposing counsel as a witness at trial in order to obtain counsel's disqualification, and later failing to subpoena and call counsel as a witness at trial, is an action that is absolutely immune from a claim of tortious interference with a business relationship by virtue of Florida's litigation privilege." The *Levin* case arose out of a personal injury action in which the defendant's insurance company failed to settle the action and a judgment beyond the primary policy limit was ultimately awarded to the plaintiff. Thereafter, the defendant's secondary insurer retained the Levin firm to bring a bad faith action against the primary insurance company for failure to settle the personal injury suit within the policy limits. The Levin firm had also represented the plaintiff in the underlying personal injury case. The defendant in the bad faith action listed a Levin attorney as a person who had knowledge of the alleged bad faith, and certified to the trial court that it would be calling the attorney as a witness at trial. As a result, the trial judge disqualified the Levin firm. However, the defendant never subpoenaed the Levin attorney, never called him as a witness, and never notified the court that it would not be calling him as a witness. At trial, the plaintiff won a significant monetary award.

■ The *Levin* Court answered the certified question in the affirmative. In analyzing the issue, the Court noted that, traditionally, defamatory statements made in the course of judicial proceedings, no matter how false or malicious, are absolutely privileged. *Levin,* 639 So.2d at 607. This results from a balancing between the right of an individual to enjoy a reputation unimpaired by defamatory attacks versus the right of the public to a free and full disclosure of the facts in the conduct of judicial proceedings, and the general finding that fear of chilling the actions of participants in judicial proceedings and hampering the adversary system outweighs the inability of some genuinely injured parties to seek relief. *Id.* at 608. The *Levin* Court found it appropriate to extend this reasoning to any act related to a judicial proceeding, stating:

> In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue [i.e., improperly listing a witness so as to disqualify the opposing party's attorney], so long as the act has some relation to the proceeding. The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding. Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

*Levin,* 639 So.2d at 608. The *Levin* Court went on to state that the decision to grant absolute immunity does not mean that a

remedy for a participant's misconduct is unavailable, as "a trial judge has the inherent power to do those things necessary to enforce its orders, to conduct business in a proper manner, and to protect the court from acts obstructing the administration of justice." *Id.* at 608–09. Accordingly, DuPont argues that the proper remedy for improper litigation conduct related to another case is a contempt motion before the trial court, not a separate tort action, and that Florida's absolute immunity for litigation conduct bars all of Plaintiffs' common law state damages claims. This Court agrees.

The bulk of Plaintiffs' opposition to DuPont's motion for judgment on the pleadings as to all damages claims based on litigation conduct argues that Delaware law applies to Plaintiffs' tort claims for fraudulent inducement and that under Delaware law, DuPont is not immune from civil liability. As noted above, Florida law applies to Plaintiffs' tort claims, not Delaware law. Therefore, these arguments are unavailing. Under Florida law, Plaintiffs make the following three arguments against DuPont's claim of immunity: (1) the Supreme Court of Florida's decision in *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306 (Fla.2000), demonstrates that Florida law allows a fraudulent inducement claim based on litigation conduct; (2) even if Florida law applies and the Court finds that *Mazzoni* does not authorize the lawsuit, the *Levin* case is distinguishable, and the argued-for immunity should be interpreted as only a qualified immunity; and (3) DuPont's argument for immunity is inconsistent with Florida law related to spoliation of evidence. These arguments fail to refute the Defendant's arguments that Florida's rule of absolute immunity for litigation conduct bars Plaintiffs' damages claims.

First, Plaintiffs argue that the Supreme Court of Florida's *Mazzoni* decision demonstrates that Florida law permits a fraudulent inducement claim based on litigation misconduct. However, contrary to Plaintiffs' contentions, that was not the holding of the Supreme Court. Based on a certified question from the Eleventh Circuit Court of Appeals, the Supreme Court of Florida specifically held that: (a) where, as here, the defrauded party elects to affirm the contract and sue for damages, the choice-of-law provision in the settlement agreement shall be enforced (*see Mazzoni*, 761 So.2d at 313); and (b) in those cases in which the settlement agreements do not contain a choice-of-law provision, Florida law controls, and the release language is too narrow to bar fraudulent inducement claims (*see Mazzoni*, 761 So.2d at 316). The Supreme Court of Florida did not examine the possibility of immunity for litigation conduct, and to say that they impliedly denied the possibility of immunity in these cases is to read too much into the *Mazzoni* opinion.

Second, Plaintiffs argue that *Levin* is distinguishable and that any immunity owed to DuPont is only a qualified immunity, and is therefore overcome by Plaintiffs' allegations. Specifically, Plaintiffs argue that *Levin* is distinguishable because the alleged tortfeasor's actions in that case were within the applicable rules of procedure, whereas the illegal conduct alleged in the Amended Complaint in this case is not within the rules of procedure. Such a distinguishing characteristic is illusory and has not been recognized in any Florida decisions before or after *Levin.* It can arguably be said that all litigation conduct, whether through damaging statements or acts, violates the rules of procedure, including the Florida equivalent of Rule 11, yet the absolute litigation immunity is consistently applied by Florida courts when the statements or actions are related to

judicial proceedings. *See, e.g., Rushing v. Bosse*, 652 So.2d 869, 876 (Fla. 4th DCA 1995) (stating that absolute immunity would be awarded for conduct involving a violation of Florida Rule of Judicial Administration 2.060(d) (the equivalent of Fed.R.Civ.P. 11 because such conduct is related to the judicial proceedings)); *Donner v. Appalachian Ins. Co.*, 580 So.2d 797, 798 (Fla. 3rd DCA 1991) (finding that alleged fraudulent misrepresentations made during discovery in a previous action are entitled to absolute immunity).

Next, Plaintiffs argue, based on *Fridovich v. Fridovich*, 598 So.2d 65 (Fla.1992), that any immunity granted to DuPont's actions should be a qualified immunity, subject to being overcome by a showing that the actions or statements were done or uttered with common law express malice. According to Plaintiffs, *Fridovich* should be read to grant only a qualified immunity where the facts of the case are particularly egregious, as they were in *Fridovich*.

In *Fridovich*, the plaintiff brought suit against his brother, alleging defamation, intentional infliction of mental distress, and malicious prosecution arising out of a conspiracy amongst the plaintiff's family members to have him falsely arrested, indicted, convicted, and sentenced for the murder of his father. Apparently, the plaintiff had shot and killed his father, after which law enforcement officials conducted an investigation and concluded that the shooting was accidental. *Fridovich*, 598 So.2d at 66. No charges were filed and the investigation was closed. Thereafter, after becoming dissatisfied with plaintiff's handling of the estate, a group of family members, including plaintiff's brother, made false statements to police investigators and prosecutors to encourage them to reopen the case. *Id.* As a result,

the case was reopened, plaintiff was indicted for first-degree murder, and a jury found him guilty of manslaughter. After trial, two of the conspirators recanted and admitted that their in-court testimony was false. The conviction was reversed on other grounds, plaintiff was tried again, and he was again convicted of manslaughter. *Id.*

The *Fridovich* Court held that the conspirators' defamatory statements made to the authorities were only entitled to a qualified immunity, which was sufficiently overcome by the egregious facts of the *Fridovich* case. *Fridovich*, 598 So.2d at 68–69. However, contrary to Plaintiff's contentions, *Fridovich* does not stand for the general proposition that egregious facts warrant only qualified immunity instead of absolute immunity. The Supreme Court of Florida specifically framed the "primary question" in *Fridovich* to be "whether defamatory statements made to the authorities *prior* to the initiation of criminal proceedings are absolutely privileged as within the course of judicial proceedings." *Id.* at 66 (emphasis in original). As this quote demonstrates, the crux of the case hinged on the timing of the defamatory statements, coming as they did during the reporting of events concerning a crime, prior to the institution of criminal charges. *Fridovich* is therefore distinguishable from the case currently before the Court, and Plaintiffs' argument that the Court should only apply a qualified immunity standard to DuPont's actions is unconvincing.

■ Third, Plaintiffs argue that DuPont's assertion that it is entitled to absolute immunity for litigation conduct is inconsistent with Florida law related to spoliation of evidence. Count Twelve of the Amended Complaint seeks damages

for spoliation of evidence.[7] DuPont's motion for judgment on the pleadings specifically excluded the spoliation claim under Count Twelve, and DuPont made no arguments in its motion with respect to this cause of action. It is therefore unnecessary and inappropriate for the Court to address Plaintiffs' arguments with respect to spoliation of evidence at this time, and they are deemed to be irrelevant for purposes of deciding this motion.

Finally, Plaintiffs submitted a notice of supplemental authority on December 12, 2000 that they claim supports their arguments against enforcement of absolute immunity for litigation conduct in this case. The notice highlights an August 7, 2000 Order Denying Defendant, E.I. DuPont de Nemours and Company's, Motion to Dismiss and Amended Motion to Dismiss Second Amended Complaint issued by the Circuit Court for the Eighth Judicial Circuit in and for Alachua County, Florida, Division J, in *Gilley v. Friedman, Rodriguez, Ferraro & St. Louis, P.A.*, Case No. 98-2781-CA (attached as Exhibit F to Plaintiffs' Notice of Supplemental Authority). The Notice also includes a copy of Gilleys' Supplemental Motion for Leave to Assert Claim for Punitive Damages (Exh. A), DuPont's Amended Motion to Dismiss Plaintiffs' Second Amended Complaint (Exh.B), Plaintiffs' Brief in Opposition to Defendants' Supplemental Motions to Dismiss (Exh.C), Plaintiffs' letter to Judge Chance post-hearing and proposed judgment (Exh.D), and DuPont's response memorandum to Plaintiffs' letter brief Judge Chance dated July 27, 2000 (Exh.E).

In *Gilley*, Plaintiff Jerry Gilley and Doris Gilley d/b/a Gilley Farms and Jeffrey Wagner and Susan Wagner d/b/a Florida Regional Landscape Nursery sued the law farm of Friedman, Rodriguez, Ferraro & St. Louis, P.A., shareholders in Friedman, Rodriguez, and DuPont for claims of breach of fiduciary duty, fraud and conspiracy to commit actual fraud, conversion, recovery of secret profits, and intentional interference with contract. The plaintiffs had hired Friedman, Rodriguez in 1995 to pursue claims against DuPont for damages to their farming operations related to the use of Benlate on their crops. According to the plaintiffs, in August, 1996, the law firm defendants accepted a secret bribe from DuPont in connection with the settlement of the plaintiffs' claims.

DuPont's motion to dismiss the amended complaint in *Gilley* argues that all the claims against DuPont, which are based on DuPont's alleged misconduct in settling the Plaintiffs' claims in the underlying actions, must be dismissed because: (1) DuPont's actions are absolutely protected by Florida's litigation privilege; (2) the Plaintiffs have waived their claims against DuPont; (3) Plaintiffs fail to otherwise state a cause of action against DuPont in each of Counts III through VI; and (4) Plaintiffs fail to satisfy the pleading requirements for class representation.

The Order issued by the state court (Exh.F) summarily denies DuPont's motion without any analysis or statement of reasons. As such, this Court is unable to ascertain the circuit court's reasoning or to grant the order any persuasive authority. Simply because DuPont raised the issue of litigation privilege in a motion that was summarily denied in a different case in-

---

**7.** The elements of a spoliation of evidence claim are: (1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages. *Continental Ins. Co. v. Herman*, 576 So.2d 313, 315 (Fla. 3rd DCA 1990).

volving a distinctly different factual scenario than the case before this Court is not sufficient to persuade this Court that the absolute immunity for litigation conduct recognized by the Florida Supreme Court in *Levin* does not apply here.

Plaintiffs have not disputed that the misconduct allegedly committed by DuPont that forms the basis for the majority of the claims in this lawsuit bears some relation to other judicial proceedings that were going on concurrently to the underlying lawsuit. The misconduct is alleged to include the following actions:

(1) Falsification and concealment of the Alta Labs [8] data. The Plaintiffs allege that DuPont refused to produce the results and raw data when ordered to do so by the *Bush Ranch* trial court. Complaint ¶¶ 72–88. DuPont allegedly prepared a false summary of the Alta Labs data, which it presented at trial through its expert at the *Bush Ranch* trial, who also testified falsely in court. Amended Complaint ¶¶ 84–90. DuPont's attorneys are also alleged to have made false statements to the court in the *Billy Lambert v. DuPont* case regarding Alta Labs test results, and to have failed to correct those false statements. Amended Complaint ¶¶ 100–104. Furthermore, DuPont is alleged to have fraudulently concealed Alta Labs test results to the court in the Hawaii Benlate litigation by presenting false testimony and falsely asserting the work-product privilege. Amended Complaint ¶¶ 107–113, 129–134.

(2) Concealment of the Costa Rica field tests. Plaintiffs allege that DuPont conducted field tests in Costa Rica in 1992 that showed that Benlate was defective. Amended Complaint ¶ 191. DuPont then destroyed the results and denied the existence of the field tests in discovery responses and in the courtroom. *Id.* at ¶¶ 191–227. The existence of this scheme was uncovered in the *Davis Tree Farms, Inc. v. DuPont* case.

This Court finds that the acts allegedly committed by DuPont, although perhaps egregious and damaging to Plaintiffs, are definitely related to other judicial proceedings and that DuPont is therefore immune from civil liability for its actions. As noted in *Levin,* this does not mean that DuPont is immune from punishment: it may be held in contempt by the courts that it allegedly defrauded, it may be prosecuted by the state for criminal violations, and its attorney's may be disciplined by the bar for their alleged ethical violations. *See Levin,* 639 So.2d at 608. In fact, as demonstrated by the orders attached to the Plaintiffs' Request for Judicial Notice, DuPont has already been subject to reprimands and monetary sanctions for its actions by some of the courts in which it is alleged to have committed its tortious behavior. *See* August 21, 1995 Opinion and Order in *Bush Ranch v. DuPont,* No. 4:95–CV–36 (JRE) (M.D.Ga.) [Request for Judicial Notice Exh.F]; August 5, 1996 Order in *Davis Tree Farms, Inc. v. DuPont,* Case No. 92–2006 (CA 23) (Fla.11th Cir.Ct.).

Accordingly, the Court finds that all of Plaintiffs' state law damages claims, to the extent those claims are based on litigation conduct, should be dismissed. This includes Counts One, Two, Three, Five, Eight, Nine, Ten, Eleven, and Thirteen.

---

**8.** Alta Labs of California was one of the few laboratories in the country capable of performing the sophisticated soil and water analysis necessary to detect trace amounts of SU contamination in the soil and water of the plaintiffs' farms. DuPont took soil and water samples from the plaintiffs' farms and sent them to Alta in July, 1993, in preparation for the *Bush Ranch v. Dupont* trial. Amended Complaint ¶ 65–67.

### 2. Federal Law: Counts Six and Seven (Civil RICO claims)

Plaintiffs seek relief in Counts Six and Seven for alleged violations of the civil RICO act, 18 U.S.C. § 1962(c) and (d).[9] Plaintiffs allege that mail fraud, in violation of 18 U.S.C. § 1341, wire fraud, in violation of 18 U.S.C. § 1343, obstruction of justice, in violation of 18 U.S.C. § 1503, and tampering with witnesses, in violation of 18 U.S.C. § 1512, constitute the relevant "predicate offenses" for a civil RICO action. The Amended Complaint alleges that DuPont formed an enterprise with others for the purpose of defrauding the Benlate claimants, including the above named Plaintiffs, in order to diminish the value of the Benlate claimants' claims. The offending conduct is alleged to include intentional concealment of the Alta Labs documents and data, the BAM and BPM documents (concerning Benlate testing by other labs-see Amended Complaint ¶¶ 146–190), the test results identifying contamination in the Bartlo lots, and the Costa Rica testing information, misleading and fraudulent answers to discovery requests, false and deceptive responses to court orders to produce, and false deposition testimony and statements by DuPont's attorneys to the courts in *Bush Ranch v. DuPont*, No. 92–33–COL, United States District for the Middle District of Georgia, *Kawamata v. United Agri Products*, Circuit Court of the Third Circuit, State of Hawaii, *Tomono v. DuPont*, Civ. No. 92–247K, Circuit Court of the Third Circuit, State of Hawaii, *Billy Lambert v. DuPont*, Florida Circuit Court, *Ritter–Whitworth v. DuPont*, Florida Circuit Court, *Smith v. DuPont*, Florida Circuit

Court, and *Davis Tree Farms, Inc. v. DuPont*, Florida Circuit Court, as well as intimidating and impeding witnesses in the *Bush Ranch v. DuPont*, *Native Hammock, Inc. v. Dupont* and *Asia Pacific v. DuPont* cases.

The provisions of 18 U.S.C. § 1961, *et seq.* (the RICO Act) provide civil and criminal liability for persons engaged in "a pattern of racketeering activity." *See* 18 U.S.C. § 1962(a–d). Persons injured by reasons of a RICO violation have a civil cause of action under the terms of the act. *See* 18 U.S.C. § 1964. The four elements of civil RICO liability are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Durham v. Business Management Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988) (internal quotation marks omitted). Plaintiffs in such an action must identify and prove a pattern of racketeering activity, defined as two "predicate acts" of racketeering activity within a 10 year period. *See* 18 U.S.C. § 1961(5). The phrase "racketeering activity" is defined as including any act which is indictable under a lengthy list of criminal offenses, including the federal statutes prohibiting mail and wire fraud, obstruction of justice, and tampering with witnesses. *See* 18 U.S.C. § 1961(1).

Defendant DuPont has attacked Plaintiffs' RICO claims by arguing that the Amended Complaint does not set forth valid and actionable predicate racketeering acts. DuPont argues that the allegations of litigation misconduct do not support the federal civil RICO claims set forth as Counts Six and Seven of the Amended

---

9. In relevant part, 18 U.S.C. § 1962 provides:
 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

Complaint because federal courts recognize immunity for prior litigation conduct in the RICO context and because the RICO statute does not abrogate common law privileges. Plaintiffs argue in response that numerous federal courts have in fact upheld civil RICO claims based on litigation related misconduct, and that the cases relied on by DuPont are distinguishable.

■ Plaintiffs' arguments with respect to the civil RICO claims are persuasive. Defendants have not been able to direct the Court to any federal cases specifically holding that litigation conduct by a litigating party in a prior case is entitled to absolute immunity and may not form the basis of a subsequent federal civil RICO claim, and the Court is unaware of any cases that make such a finding. The Court is persuaded by the language of the Seventh Circuit discussing the use of perjury in a prior lawsuit as a possible predicate racketeering act:

> If [the plaintiff] can show that the defendants' lies constituted mail or wire fraud, 18 U.S.C. §§ 1341 and 1343, or an obstruction of justice, 18 U.S.C. § 1503, then those cover-up acts theoretically may serve as predicate acts. *See C & W Constr. Co. v. Brotherhood of Carpenters and Joiners, Local 745*, 687 F.Supp.

1453, 1467 (D.Haw.1988) ("The more reasoned rule would allow perjury to be a predicate act under 18 U.S.C. § 1962(1), through 18 U.S.C. § 1503, where the plaintiffs allege that the perjury was part of the pattern of racketeering."); *see also South Chicago Bank v. Notaro*, 1991 WL 21185, 1991 U.S. Dist. Lexis 1602 (N.D.Ill. Feb.12, 1991) (mailing false financial statements during litigation might be considered predicate acts if mailings proximate cause of RICO injury); *Levit v. Brodner*, 75 B.R. 281, 285 (N.D.Ill.1987) (perjury and destruction of evidence in bankruptcy action might serve as predicate act in subsequent RICO suit).

*Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1021–22 (7th Cir.1992).[10] This passage indicates that litigation conduct, to the extent it constitutes a prohibited action set forth in 18 U.S.C. § 1961(1), may form the basis for predicate racketeering acts and is not afforded the absolute immunity in federal courts that Florida courts afford to such conduct.[11] Additional support is provided by the holdings of other federal courts that the filing of vexatious lawsuits to extort money or property may constitute the requisite predicate racketeering acts. *See Lemelson v. Wang Laboratories,*

---

**10.** DuPont argues that the Court's statements in *Midwest Grinding* are inapplicable because perjury is not listed as a predicate act in § 1961, an indication that litigation conduct was intended by Congress not to serve as the basis of a federal RICO claim. DuPont has not set forth any precedent to support this assertion, and to the extent this argument directly contradicts the quoted language set forth above, this Court rejects it. Furthermore, DuPont argues that *Midwest Grinding* is also distinguishable and/or inapplicable because almost all of Plaintiff's obstruction allegations concern proceedings in state courts that cannot constitute federal obstruction. To be sure, several federal courts have held that 18 U.S.C. §§ 1503 and 1512 do not apply to

state court proceedings. *See O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2nd Cir.1990); *Park South Assoc. v. Fischbein*, 626 F.Supp. 1108, 1113 (S.D.N.Y.1986). However, Plaintiffs' have alleged that several of the acts of obstruction of justice and witness intimidation occurred in relation to *Bush Ranch v. DuPont*, a federal case.

**11.** As noted by the Eleventh Circuit Court of Appeals when analyzing a defendant's duty to disclose under the federal mail and wire fraud statutes in *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308 (11th Cir.2000), an analysis of state law alone, without consideration of federal law, is incomplete.

*Inc.*, 874 F.Supp. 430, 434–35 (D.Mass. 1994); *Hall American Center Associates v. Dick*, 726 F.Supp. 1083, 1097 (E.D.Mich. 1989).

DuPont argues that the federal courts recognize broad immunity of parties and witnesses from subsequent damages liability for their testimony and actions in judicial proceedings, and that this immunity should be applied in the RICO setting. However, the majority of cases relied on by DuPont arise in the context of 42 U.S.C. § 1983 actions,[12] and are therefore distinguishable. The immunity principles these cases set forth are based in a different statutory context and were formulated to shield parties from different types of liability. Even accepting the fact that general common law principles provide absolute immunity to witnesses and lawyers for defamatory or false statements made in litigation, this does not necessarily shield DuPont from liability for its fraudulent acts, such as concealing and altering data and defying judicial orders to turn over information, and does not affect the witness tampering and obstruction of justice allegations, which must be expected to "relate to" a judicial proceeding.

### 3. Bringing an independent action under Rule 60(b): Count Four

The Fourth claim for relief in the Amended Complaint is labeled as a claim for "Fraud on the Court" and "Independent Action Recognized in FRCP Rule 60(b)." Plaintiffs allege that DuPont's actions constitute a scheme to defraud not only the Plaintiffs, but also the United States District Court and the state courts of Florida and Hawaii. As relief, Plaintiffs

ask that they be relieved from the settlements in the underlying matters, and that they be awarded the difference between the settlements received and the settlement values had there been no fraud upon the Court, that sanctions be imposed, and that they receive attorney's fees and punitive damages.

 Federal Rule of Civil Procedure 60, entitled "Relief From Judgment or Order," states:

> On motion and upon such terms as are just, the *court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;* ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), *misrepresentation, or other misconduct of an adverse party;* ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.... This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court.

Fed.R.Civ.P. 60(b). The last sentence, termed the "savings clause" of Rule 60(b), provides the basis for Plaintiffs' claim for relief. The savings clause has three components and authorizes three types of ac-

---

12. *See Briscoe v. LaHue*, 460 U.S. 325, 330, 103 S.Ct. 1108, 1113, 75 L.Ed.2d 96 (1983); *Charles v. Wade*, 665 F.2d 661, 666–67 (5th Cir.1982); *Collins v. Walden*, 613 F.Supp. 1306, 1314–15 (N.D.Ga.1985); *Burns v. Reed*, 500 U.S. 478, 489–90, 111 S.Ct. 1934, 1941, 114 L.Ed.2d 547 (1991); *Kahn v. Burman*, 673 F.Supp. 210, 212 (E.D.Mich.1987); *Jones v. Cannon*, 174 F.3d 1271, 1288–89 (11th Cir. 1999); *Mastroianni v. Bowers*, 173 F.3d 1363, 1367 (11th Cir.1999); *Franklin v. Terr*, 201 F.3d 1098, 1101–02 (9th Cir.2000).

tions: an "independent action" to be relieved of an order, an action for relief to a defendant who did not receive notification, and an action to set aside a judgment for fraud upon the court. Due to the universal interest in the finality of judgments, resort to an independent action is only permitted under unusual and exceptional circumstances. *In re Hillsborough Holdings Corp. (Walter v. Celotex Corp.)*, 203 B.R. 1000, 1006 (Bankr.M.D.Fla.1996) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1281 (6th Cir.1991)). The Eleventh Circuit has held that the elements of an independent action under the savings clause of Rule 60(b) are:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of defendant; and (5) the absence of any adequate remedy at law.

*Securities & Exchange Commission v. ESM Group, Inc.*, 835 F.2d 270, 273 (11th Cir.1988) (citing *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 79 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970)). Plaintiffs in this case have alleged in the Amended Complaint and asserted in their pleadings that their action is for fraud on the court, not an "independent action" as defined above. Fraud on the court is defined as:

> embracing only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudica-

tion, and relief should be denied in the absence of such conduct.

*ESM Group, Inc.*, 835 F.2d at 273 (citing *Travelers Indemnity Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir.1985) (per curiam)). Whereas fraud between the parties must be brought to the court's attention within one year after judgment is entered, fraud that prevents the functioning of the judicial process does not have to brought within any specific period of time. *ESM Group, Inc.*, 835 F.2d at 273.

DuPont concedes in its pleadings that a party to a federal judgment can seek relief from that judgement under Fed.R.Civ.P. 60, that a federal court retains inherent authority to set aside a federal judgment for "fraud on the court," and that sanctions and other criminal penalties can be imposed for criminal contempt and other litigation-related crimes. The crux of DuPont's argument is that compensatory relief is not available under Federal Rule 60.

Plaintiffs rely primarily on *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) as support for Count IV. In *Hazel–Atlas*, the defendant and its attorneys had written an article extolling the virtues of a patented process for glass pouring and had convinced an industry expert to sign the article as the author. The attorneys then relied on the article as authority in their arguments to the Third Circuit in a patent infringement action. *Hazel–Atlas*, 322 U.S. at 240–41, 64 S.Ct. at 998–99. The Supreme Court found that the deliberately planned and carefully executed fraud amounted to a "wrong against the institutions set up to protect and safeguard the public." *Id.* at 246, 64 S.Ct. at 1001. Despite the fact that the prior circuit court decision had been rendered nine years before the present suit, the Supreme Court held that the Third Circuit had the power and. authority to vacate its prior judgment

and give the district court appropriate directions. *Id.* at 250, 64 S.Ct. at 1003.

While *Hazel–Atlas* supports Plaintiffs' arguments that an action based on fraud on the court is permissible more than one year after a judgment, a decision that was endorsed by Fed.R.Civ.P. 60(b), it does not support Plaintiffs' arguments that any federal court may hear an action for fraud on the court and that compensatory damages are valid relief in such an action. Plaintiffs have cited the Advisory Committee Notes to the 1946 Amendments to Rule 60, which state that Rule 60(b) authorizes "a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered the judgment." However, this quote refers to the "independent action" for relief component of the savings clause, not the fraud on the court component, and the cases cited by the Plaintiffs are not supportive of any other position. *See Locklin v. Switzer Bros., Inc.*, 335 F.2d 331 (7th Cir.1964); *Hadden v. Rumsey Products, Inc.*, 196 F.2d 92 (S.D.N.Y.1952); *D'Addino v. Dulles*, 136 F.Supp. 417 (E.D.N.Y.1954).

Instead, the District Court of South Carolina's reasoning in *Chewning v. Ford Motor Co.*, 35 F.Supp.2d. 487 (D.S.C.1998) is persuasive on the dispositive issues that the parties have presented. *Chewning* was before the district court on a motion of the defendants to dismiss the matter on the pleadings. The plaintiffs alleged that, in a prior state court case, the defendants engaged in a pattern of hiding or destroying evidence and lawyer-assisted perjury which led to an adverse state court judgment against the plaintiffs. *Chewning*, 35 F.Supp.2d at 488. The complaint contained a count for fraud on the court, as well as counts for fraud, non-disclosure, conspiracy, and spoliation of evidence, and the plaintiff sought "damages including special damages, punitive damages, equitable relief estopping [the Defendant in the state court action] from asserting the verdict procured by the Defendants' fraud and criminal acts, prejudgment interest, costs, attorneys' fees and such other relief as the Court deems proper." *Id.*

The *Chewning* court analyzed the Supreme Court's decision in *Hazel–Atlas*, as well as Fourth Circuit decisions in *Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters*, 675 F.2d 1349 (4th Cir.1982) and *Weisman v. Charles E. Smith Management, Inc.*, 829 F.2d 511, 513 (4th Cir. 1987), and determined that Rule 60 does not authorize an independent action for damages and that "the proper forum in which to assert that a party has perpetrated a 'fraud on the court' is the court which allegedly was a victim of that fraud." *Chewning*, 35 F.Supp.2d at 491 (quoting *Weisman*, 829 F.2d at 513). Just as in the *Chewning* case, Plaintiffs in this case have not provided the Court with any authorities that suggest an independent action for damages in a separate court exists under Rule 60(b), particularly based on fraud on the court. The rationale employed by the *Chewning* court is also applicable: allowing damages claims such as these would permit relitigation of cases and issues and place before a jury a decision that is vested within the equitable powers of the court, and would also permit a party to subvert the balance of equities contained in Rule 60. *Chewning*, 35 F.Supp.2d at 491.

Plaintiffs argue that *Chewning* is not applicable because it was an action brought after a jury verdict was entered, whereas in this action the Plaintiffs settled their claims. While the *Chewning* court began its analysis with the presumption that verdicts are binding absent reversal on appeal or direct authority allowing for relitigation, *see Chewning*, 35 F.Supp.2d at

488–89, there is a similar strong presumption in favor of enforcing settlements in both federal and Florida state courts. *See, e.g., Reed By and Through Reed v. U.S.,* 891 F.2d 878, 882 n. 3 (11th Cir.1990) ("Once an agreement to settle is reached, one party may not unilaterally repudiate it."); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,* 761 So.2d 306, 312–13 (Fla.2000). The distinction that Plaintiffs attempt to make based on the procedural posture of the cases is not persuasive. Furthermore, Plaintiffs veiled suggestion that the *Chewning* court's decision to remand that action to the original forum court somehow left open the possibility of a damage award under the court's equitable powers contradicts the plain language of the opinion holding that an independent action for damages is not a viable option and that the issues on remand are limited to a determination of whether the judgment should be set aside in favor of a new trial.

### 4. Summary

Based on the findings set forth above, the Court finds that it is appropriate to grant in part and deny in part Defendant's motion for judgment on the pleadings as to all damages claims based on litigation conduct. The motion is denied with respect to the federal civil RICO claims set forth in Counts Six and Seven, and granted as to all the remaining requests for relief. Thus, based on this analysis, Counts One, Two, Three, Four, Five, Eight, Nine, Ten, Eleven, and Thirteen are dismissed, and Counts Six, Seven, and Twelve remain.

### C. Reasonable Reliance

Defendant's second motion for judgment on the pleadings, based on Plaintiffs' inability to establish reasonable reliance as a matter of law, provides an alternative basis for dismissing Plaintiffs' claims.[13]

The elements of an action for fraud in the inducement under Florida law are: (1) misrepresentation of a material fact; (2) by someone who knew or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation. *Hillcrest Pacific Corp. v. Yamamura,* 727 So.2d 1053, 1055 (Fla. 4th DCA 1999). DuPont's motion focuses on the fourth element's requirement that the plaintiffs must have justifiably relied on the representations.

### 1. The *Mergens* Rule

In *Mergens v. Dreyfoos,* 166 F.3d 1114 (11th Cir.1999), *cert. denied,* 528 U.S. 820, 120 S.Ct. 63, 145 L.Ed.2d 55 (1999), the Eleventh Circuit Court of Appeals affirmed the district court's granting of judgment on the pleadings to the defendant. The claims in *Mergens* stemmed out of the negotiation and execution of a stock repurchase agreement between the parties. The agreement contained a merger clause and a general release applicable to all claims accrued as of the date of the

---

**13.** The Court notes that Plaintiffs allege in their Amended Complaint in this case that they "reasonably relied on the statements, conduct, testimony and/or other representations made by DuPont and its agents, and reasonably relied on DuPont and its agents to obey statutes, court orders, rules of evidence, written agreements, representations to the court by officers of the court, and representations made under oath to the court by Du-

Pont's officers and agents." Amended Complaint ¶ 245. The Court need not accept this conclusory legal allegation in deciding a Rule 12 motion, and finds upon further analysis that it is an incorrect assertion of the law in this case. *See* 5A Wright & Miller, *Federal Practice and Procedure* § 1368 (2d ed.1990); *Kohen v. H.S. Crocker Co.,* 260 F.2d 790, 792 (5th Cir.1958).

agreement. Immediately after the plaintiffs were paid in full for their stock they learned that the company had sold its main asset for a significant profit, and they sought to rescind the agreement. The defendant refused, whereupon the plaintiffs brought suit, alleging, among other things, common law fraud in the inducement. Specifically, the plaintiffs alleged that the defendants misrepresented the cash flow and other assets of the subject company in order to induce them to sell at a below market price. *Mergens,* 166 F.3d at 1116.

The Eleventh Circuit established a bright-line test in *Mergens* regarding a party's legal right to rely on the representations of another party prior to entering an agreement which it succinctly stated as: "when negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties." *Mergens,* 166 F.3d at 1118 (quoting *Pettinelli v. Danzig,* 722 F.2d 706, 710 (11th Cir.1984)). Specifically, the Court of Appeals found in *Mergens* that reliance on the defendants' misrepresentations and/or omissions was unjustified, as a matter of law, because: (a) the plaintiffs were sophisticated players in the industry and were represented by counsel; (b) the parties had been in an adversarial relationship since well before the execution of the agreement; and (c) the existing controversy between the parties involved allegations of fraud and/or dishonesty by the defendants. *Mergens,* 166 F.3d at

1118. Based on this rule and its application in *Mergens,* this Court is obliged to find that Plaintiffs cannot establish reasonable reliance and to grant DuPont's motion for judgment on the pleadings.[14]

The Plaintiffs in this case, as well as in the related Benlate cases, are individual growers and nurserymen and large incorporated nurseries. Plaintiffs were represented by legal counsel throughout the Underlying Litigation and those counsel were in contact with other Benlate plaintiffs' lawyers throughout the country and were monitoring other Benlate litigation to gain information. *See, e.g.,* First Amended Complaint ¶¶ 2, 45, 54, 106, 166, 206, 224; Plaintiff's Reply to Counterclaim ¶¶ 8, 11. Therefore, Plaintiffs and their counsel were knowledgeable and sophisticated actors in the Underlying Litigation from which the settlement agreement stemmed.

Furthermore, the parties in this case were in an extremely adversarial, litigious relationship prior to the execution of the agreement. Numerous other Benlate related lawsuits, including *Bush Ranch, Kawamata/Tomono, Ritter–Whitworth,* and *Lambert,* were filed against DuPont in the early 1990's, and those cases were culminating in the first trials in 1994. The parties were aware of the stakes involved in such litigation, and, as evidenced by the discovery disputes and allegations of fraudulent discovery conduct in related Benlate cases, the litigation was contentious. Moreover, the Plaintiffs allege that DuPont's concealment and fraudulent con-

---

**14.** Part of Plaintiffs' argument centers around the contention that the case is not ripe for adjudication on a motion for judgment on the pleadings. *Mergens* itself is based on a district court order granting judgment on the pleadings despite having previously denied a Rule 12(b)(6) motion to dismiss, so it is clear that, under certain circumstances, judgment on the pleadings based on failure to establish reasonable reliance as a matter of law is

appropriate. *See Mergens,* 166 F.3d at 1116–17. In this case, the First Amended Complaint, Counterclaim and Answer, and Reply to the Counterclaim, along with the attachments to each of those documents, are sufficiently detailed so as to resolve all the issues of material fact pertinent to this motion. Judgment on the pleadings is therefore appropriate in this case.

duct commenced on or before September 1991 and continued through the Underlying Litigation and to the present, thus taking place before, during, and after the litigation. Amended Complaint ¶ 50. The pleadings make it clear that at all times, the parties were in an adversarial and contentious relationship.

In addition, one of the claims in the Underlying Complaint was for "Actual Fraud" against DuPont. Complaint and Request for Jury Trial, Count Nine (of Nine), *Green Leaf Nursery, Inc. v. E.I. DuPont de Nemours & Co., Inc.*, Case No. 92–20969 (Eleventh Judicial Circuit, Dade County, Fla.) (attached to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint as Exh. A, D.E. 34). Specifically, the Underlying Complaint alleges that "Prior to the September 1989 recall, DuPont knew that Benlate was defective and despite this superior knowledge, knowingly continued to advertise, distribute, and sell Benlate as fit for its intended use without disclosure of Benlate's defects," and that "DuPont made false statements concerning the fitness of Benlate and omitted disclosure of the continued defects in the Benlate" even though it "knew that its representations concerning the fitness of Benlate were false." *Id.* ¶¶ 68–71. Thus, the Underling Complaint involved allegations of fraud and dishonesty that were integrally related to the continued damaging use of Benlate over several years by the Plaintiffs.

### 2. Similarity of the First Fraud and the Subsequent Fraud[15]

Plaintiffs attempt to distinguish *Mergens*, as well as the prior Eleventh Circuit

and Florida cases on which that decision is based (specifically, *Pettinelli v. Danzig*, 722 F.2d 706 (11th Cir.1984) and *Columbus Hotel Corp. v. Hotel Mgmt. Co.*, 116 Fla. 464, 156 So. 893 (1934)), by arguing that the fraudulent inducement claims do not arise from the same conduct as the claims asserted in the underlying product liability actions. Plaintiffs point to the fact that the Supreme Court of Florida, in analyzing whether an identical settlement agreement and release barred a claim for fraud, found that the "fraudulent inducement claim does not arise from the use or application of Benlate," *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 315 (Fla.2000), and that the Supreme Court of Delaware found the torts related to the manufacture or distribution of Benlate and the tort of fraudulent inducement to settle to be "different sequentially and conceptually." *E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage*, 744 A.2d 457, 462 (De.1999). According to Plaintiffs, there is an inherent disconnect between their allegations in the underlying product liability litigation that DuPont manufactured a defective product (Benlate) and fraudulently misrepresented that product's fitness for its intended use, and the current claims that DuPont fraudulently induced them into settling their underlying product liability claims by committing perjury and otherwise fraudulently concealing test data during the course of the related product liability litigations.

Of course, these arguments are only relevant if the Eleventh Circuit and Florida

---

15. Plaintiffs have brought to the Court's attention, and DuPont has acknowledged, that not every underlying complaint in the related Benlate settlement fraud cases that are before this Court contained an express allegation of fraud. The motion for judgment on the pleading based on reasonable reliance was filed in only this particular case, so the analy-

sis has focused on the facts particular to this case. However, a general review of the complaints in the other cases reveals that similar issues will arise with respect to the other cases and that, as the law of the case, this Order will play an important role in resolving those issues.

courts hold that a difference between the fraud claims in the underlying suit and the fraud claims in the fraudulent inducement case must concern the same subject matter. Plaintiffs have not directed the court to any authorities supporting this statement of the law, and generally Courts have not recognized such a difference as being significant. *See, e.g., Finn v. Prudential–Bache Securities, Inc.,* 821 F.2d 581, 585–86 (11th Cir.1987) (finding that fraud claims based on the allegations that the defendant "lied about [their broker's] conduct in an effort to induce the [Plaintiffs] to sign the release" were barred where there was a relationship of mistrust established by Plaintiff's knowledge that defendant had used a fraudulent financial statement and had reason to believe their account was mismanaged); *Hall v. Burger King Corp.,* 912 F.Supp. 1509, 1524–25 (S.D.Fla.1995) (holding that plaintiffs could not rely on alleged misrepresentation concerning the terms of a signed release where they had previously realized they had been "lied to all along" by the defendant). Such a requirement would appear to blur the rule and lead to untenable results, since the misrepresentations that lead a party to settle a dispute would almost always differ in some manner from the allegations of fraud on which the original dispute was based. Because Plaintiffs have not established that this distinction is relevant, their attempts to distinguish *Mergens* on this ground are unconvincing.

Moreover, the allegations of fraud and dishonesty in the Underlying Lawsuit are sufficiently related to the fraudulent conduct at issue in the settlement fraud suit so as to vitiate this concern. In the Underlying Lawsuit, the Plaintiffs alleged that DuPont intentionally concealed Benlate's defects, made false statements to the Environmental Protection Agency about its safety, and made false and misleading statements in public about the fitness of Benlate. Underlying Complaint, Count IX, ¶¶ 67–73. In the current action, Plaintiffs allege that Defendants carried out a scheme to intentionally conceal material information regarding Benlate's defects from the Court and opposing parties, including Plaintiffs. *See, e.g.,* Amended Complaint ¶¶ 5, 11. Although the means are alleged to be slightly different, both claims involve the same type of fraudulent activity. This similarity is reinforced by the allegations in the Amended Complaint in this case that the fraudulent scheme to conceal Benlate defects began on or before September 1991, a time period that encompasses the Underlying Complaint. Amended Complaint ¶ 5.[16]

Not only were the general fraud allegations in the Underlying Complaint and the Amended Complaint in this action of a similar type, but the pleadings also reveal that Plaintiffs had knowledge that DuPont had been accused of discovery abuse in related cases prior to the signing of the settlement agreement and the subsequent dismissal of the Underlying Lawsuit. The Plaintiffs allege in the Amended Complaint that their attorneys were monitoring other Benlate litigation and were in close contact with other Benlate plaintiffs' attorneys around the country. Amended Complaint ¶¶ 2, 94, 97, 106. The Plaintiffs have admitted that the *Bush Ranch* plaintiffs, in one of the cases that was particularly closely watched by Plaintiffs' and their attorneys, had accused DuPont of fraud, concealment of test data, and discovery abuse in 1993, before the settlement docu-

---

**16.** Plaintiff's have attempted to back pedal from this assertion by stating in their briefs to the Court that acts at issue in their current claims occurred only in 1993 and 1994. However, it is the unamended statements in the Plaintiffs' pleadings, not their arguments in a brief, that are accepted as true for purposes of this order.

ments in the Underlying Lawsuit were executed and implemented. *See* Counterclaim ¶ 40; Reply to Counterclaim ¶ 20. Plaintiffs deny that the claims of fraud, concealment of test data, and discovery abuses asserted by the *Bush Ranch* plaintiffs are based on the same conduct by DuPont as the fraudulent inducement claims in this case. Reply ¶ 20. Even accepting this denial as true, it is clear that DuPont was accused of dishonest and fraudulent conduct that was of a similar type to the conduct at issue in this case. Plaintiffs admit that the discovery abuses, including the withholding of valid evidence (different from the evidence at issue in this case), were found to be so severe in the *Bush Ranch* case that the Court threatened a directed verdict on more than one occasion in June 1993. Counterclaim ¶¶ 42, 43; Reply ¶¶ 22, 23. Similar allegations of discovery abuses involving the withholding of material, evidence and destroying data were filed against DuPont in the *Kawamata/Tomono* trial in July 1993. *See* Counterclaim ¶¶ 68–72; Reply ¶¶ 35–36. Plaintiffs have further admitted that the alleged fraud was known by Plaintiffs in September, 1994, almost a year prior to the dismissal of the Underlying Lawsuit. Counterclaim ¶¶ 66–67; Reply ¶¶ 3, 34. And, one week prior to the dismissal of the Underlying Lawsuit, Judge Elliot issued a sanction order against DuPont containing numerous findings of discovery abuses that are substantially similar to the allegations of this complaint. Amended Complaint ¶ 6.

Plaintiffs reliance on the *Florida Evergreen* and *Mazzoni* decisions handed down by the Supreme Courts of Florida and Delaware under the premise that those Courts determined that the fraud claim in the Underlying Lawsuit and the fraudulent inducement claim are not sufficiently related to permit application of the *Mergens* rule is not persuasive. Although those Courts found that product liability and settlement fraud claims constitute separate causes of action, they limited their analysis to the Complaints at issue, as they were required to do on a Rule 12 motion to dismiss, and did not consider whether there was an express accusation of fraud in the underlying complaint, as there is in this case, or the more developed allegations pertaining to fraudulent discovery conduct that the pleadings in this case reveal. The Supreme Court of Florida and Delaware focused on interpreting the release language and the parties' intent in entering those releases, and did not address the issues pertinent to the *Mergens* rule analysis. The Eleventh Circuit implicitly recognized this distinction when it remanded the justifiable reliance issue to this court in *Mazzoni*. *See Mazzoni Farms, Inc. v. E.I. Dupont De Nemours & Co.*, 223 F.3d 1275, 1276 n. 2 (11th Cir. 2000).

### 3. Litigation Exception

Plaintiffs also argue that *Mergens, Pettinelli,* and *Columbus Hotel* are distinguishable because the fraudulent conduct at issue in this case took place *during* the course of litigation, whereas the conduct at issue in the cases establishing the justifiable reliance rule took place *prior* to formal litigation procedures. This distinction, however, is not determinative and does not move this case outside the reach of the *Mergens* rule.

The Florida and Eleventh Circuit cases have not articulated a litigation exception to the *Mergens* reasonable reliance rule, although the parties in *Mergens, Pettinelli,* and *Columbus Hotel* were all involved in non-litigation adversarial disputes, involving allegations of fraud, that contractually settled, and one of the parties later alleged fraud. The reason for the absence of such a rule formulation is speculative,

but may stem from the presence within Florida of absolute immunity for litigation conduct so long as such conduct relates to prior litigation, which this Court has already found is sufficient to bar Plaintiffs' fraudulent inducement claims. *See* Section B, Litigation Conduct, *supra; Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell v. United States Fire Ins. Co.,* 639 So.2d 606 (Fla.1994).

Plaintiffs argue that the fact that the conduct in this case took place during litigation, where DuPont, its agents, and its attorneys had a duty and an obligation to follow court orders and refrain from lying, renders their reliance on DuPont's misrepresentations and omissions reasonable. Plaintiffs cite the following passage from the Supreme Court of Delaware in support of their assertions:

> Candor and fair-dealing are, or should be, the hallmark of litigation and required attributes of those who resort to the judicial process. The rules of discovery demand no less. *Allstate Ins. Co., Inc. v. Walker,* Fla.Dist.Ct.App., 583 So.2d 356, 358 (1991) ("Candor towards the tribunal is essential to preserve the proper administration of justice."). The fraud alleged here, including the concealment of evidence during discovery, represents a wrong not only as to the releasing party but to the court as well. Additionally, if a party cannot release in good faith, the policy of encouraging the settlement of cases is in jeopardy.

*E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage,* 744 A.2d 457, 461 (Del. 1999). Plaintiffs also point to the fact that the Florida Rules of Professional Conduct for attorneys demand candor and obedience to court orders, and argue that permitting DuPont to flaunt these principles and punishing Plaintiffs for relying on compliance with these established tenets of conduct would set a dangerous and morally indefensible precedent.

While the Court does not condone discovery violations, perjury, or the destruction or concealment of material evidence, the fact that DuPont's alleged fraudulent conduct took place in the context of litigation does not in and of itself render Plaintiffs' reliance reasonable. DuPont's conduct may be subject to criminal sanctions, contempt of court, or bar admonitions, and may even justify a determination by the original trial court that setting aside the judgment is warranted. However, in order to state a claim for damages, Plaintiffs' reliance on DuPont's fraudulent conduct must be reasonable, even if the misrepresentations occurred in court. *Mergens* itself involved allegations of securities fraud as well as fraud in the inducement, and the fraudulent statements that allegedly induced the contract were related to the amount and disposition of the defendant's assets in preparation for a securities transaction. As the Eleventh Circuit noted in a discussion of the Investment Advisors Act of 1940, "It requires but little appreciation of what happened in this country during the 1920's and 1930's to realize how essential it is that the highest ethical standards prevail in every facet of the securities industry." *United States v. Elliott,* 62 F.3d 1304, 1312 n. 9 (11th Cir. 1995) (quoting *SEC v. Capital Gains Research Bureau,* 375 U.S. 180, 186–87, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963) (internal quotations and alterations omitted)). Thus, the parties in *Mergens* were under considerable obligations to act in good faith in their dealings with one another when the allegedly fraudulent conduct took place. Parties in the litigation context are usually in a more, not less, adversarial relationship than businessmen dealing at arm's length. *See, e.g., Eastern Air Lines, Inc. v. United States Aviation Underwriters, Inc.,* 716 So.2d 340, 343 (Fla. 3rd DCA

1998) (finding that parties who were previously in a fiduciary relationship were "clearly in the most adversarial of positions" during the litigation before the court). In this case, given the allegations of fraud in the Underlying Lawsuit between the parties, the extremely adversarial position of the parties in the lawsuit, the large number of cases around the country in which DuPont was being accused of flagrant discovery violations involving the concealment and destruction of evidence, and the Plaintiffs' continual monitoring of those other cases, it was unreasonable as a matter of law for Plaintiffs to rely on DuPont's representations in entering the settlement, and to permit the settlement to be implemented and the underlying case dismissed after knowledge of the fraud was fully known.

### 4. Due Diligence and Thwarting of Investigation

Plaintiffs have also seized upon the language in several cases stating that one of the factors to consider in evaluating reasonable reliance on another party's misrepresentations or omissions is whether the releasor demanded inquiry into relevant materials before signing the release.[17] *See Zelman v. Cook*, 616 F.Supp. 1121, 1133 (S.D.Fla.1985); *Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1524 (S.D.Fla. 1995). Plaintiffs argue that, unlike the plaintiffs in *Mergens*, they requested the specific materials in question through discovery, and that further investigation on their part was thwarted by the conduct of DuPont.

Even assuming that the Plaintiffs did attempt to conduct an investigation prior to claiming fraud, this fact is not determinative and does not obviate the application of the *Mergens* rule. DuPont's motion for judgment on the pleadings is not based on Plaintiffs' lack of diligence or failure to investigate the subject of the alleged misrepresentations and omissions, but instead focuses on the distrustful relationship between the parties. *See, e.g., Pieter Bakker Mgmt., Inc. v. First Federal Savings and Loan Assoc.*, 541 So.2d 1334, 1335–36 (Fla. 3rd DCA 1989). Whereas *Zelman* and *Hall* noted that failure to conduct an adequate inquiry prior to signing a release might be a factor weighing in favor of finding that reliance could not be reasonable, actually requesting the information does not preclude a finding that reliance was unreasonable as a matter of law.

Furthermore, *Mergens* does not recognize an exception to the justifiable reliance rule where the plaintiff's investigations were frustrated or thwarted by the defendant's conduct. In *Mergens*, the plaintiffs alleged that prior to the stock transaction at issue, they had hired attorneys and accountants to investigate the company, but the defendants lied to these agents and misrepresented the cash flow and other assets of the company in order to induce the plaintiffs to sell at an artificially low price. *Mergens*, 166 F.3d at 1116. The Circuit Court specifically rejected the argument that plaintiffs could justifiably rely on misrepresentations made to neutral third parties because the third parties informed plaintiffs that they were relying on information from the defendants, the par-

---

17. *Zelman* and *Hall* also consider whether the releasor insisted that terms to protect him or her be inserted in writing into the release. In this case, Plaintiffs did not insist on any warranties or other protective provisions in the release, and there is no allegation that, in the context of settlement (as opposed to discovery requests in the Underlying Action and in related cases), Plaintiffs had inquired into relevant information or that DuPont had made any misrepresentations during the negotiations. This factor weighs in favor of finding that Plaintiffs' reliance was unreasonable.

ties were in an adversarial relationship, and the plaintiffs knew that one of the purposes of the report was to induce a sale. *Id.* at 1118–19.

Plaintiffs' position in this case is also belied by the district court's opinion in the *Mergens* case. *See Mergens v. Dreyfoos,* 1997 WL 611576 (S.D.Fla.1997). After analyzing *Pettinelli* and its progeny, the district court found that the plaintiffs had not reasonably relied on the defendants' misrepresentations based on the following factors: (1) the "hostile and antagonistic relationship" between the parties; (2) the plaintiffs had been represented by both legal counsel and certified public accountants; (3) the plaintiffs were on notice that the information they were relying on was provided to their agents by the defendants; and (4) the agreement was entered into to settle an existing controversy over fraud. *Mergens,* 1997 WL 611576 at *12. Furthermore, the district court flatly stated: *"Pettinelli* stands for the proposition that a plaintiff under the circumstances discussed *supra* is not justified in relying on the defendant for any representation, regardless of whether the truth of the representation is ascertainable." *Id.* at *12 n. 9. Thus, Plaintiffs cannot avoid application of the *Mergens* rule by arguing that they diligently investigated the underlying facts and/or were frustrated in their attempts to ascertain those facts. *See also Finn v. Prudential–Bache Securities, Inc.,* 821 F.2d 581, 586 (11th Cir.1987).

### 5. Out-of-State Decisions

Plaintiffs have asked the Court to follow the reasoning in *Chase v. Dow Chemical Co.,* 875 F.2d 278 (10th Cir.1989) in rejecting the application of *Pettinelli* and *Mergens* to this case. *Chase* involved an action to recover damages allegedly caused to the exterior masonry walls of plaintiffs' office building by a chemical product called Sarabond that was used in binding the brick walls. The evidence, on a motion for summary judgment, showed that the defendant had conducted research in 1972 that produced a technical report regarding Sarabond's corrosive tendencies. When cracks appeared on the front of plaintiffs' building in 1975, plaintiffs began communications with defendant, and between 1976 and 1980 the parties conducted inspections and researched the cause of the problem. Defendant never turned over the damaging 1972 report and feigned ignorance of the corrosive nature of its product. This led to defendant's recommendation of a sealing solution that did not address the problem with their product and the signing of a release and indemnification agreement in 1981. Then, in 1985, plaintiffs happened to learn of the 1972 report and were forced to undergo major renovations to correct the corrosion caused by the Sarabond. *Chase,* 875 F.2d at 280–81.

Plaintiffs thereafter sued defendants for making false and misleading representations that induced them to enter into the release agreement. In finding that the plaintiffs had justifiably relied on defendant's representations, the Tenth Circuit Court of Appeals distinguished *Pettinelli.* First, the Court disagreed with the holding of *Pettinelli* and its doctrine regarding reasonable reliance, stating that, "we hold that a party is not categorically barred from relying on the representations of the opposing party when negotiating the settlement of a dispute which involves a claim for fraud." *Chase,* 875 F.2d at 283. Then the Circuit Court proceeded to distinguish *Pettinelli* on two grounds: (1) the underlying dispute between the parties regarding fraudulent marketing of defendant's product in the 1970's was characterized by the Circuit Court as primarily a property damage claim, not a fraud claim; and (2) the parties were not in a fully adversarial relationship when they entered into the re-

lease agreement, since plaintiff's believed defendant was sincere in its efforts to help.

It is not appropriate to follow the reasoning or the holding of *Chase* in this case. First, this Court is obligated to follow the holdings of *Pettinelli* and *Mergens* and their interpretation of the Florida law on reasonable reliance in fraud cases. The fact that *Chase* found this formulation unpersuasive is not binding on this Court. Second, the purported distinctions set forth by the Court in *Chase* to distinguish that case from *Pettinelli* are not present here. As noted above, the underlying fraud in this case is similar in type to the fraudulent inducement claims that are currently before the Court, and Plaintiffs also had knowledge of similar types of conduct in other related lawsuits. Furthermore, the parties were in an extremely adversarial position when the settlement agreement was signed and executed in this case.

Plaintiffs have also relied on the quotations and reasoning from an Illinois appellate court decision, *Sims v. Tezak*, 296 Ill.App.3d 503, 230 Ill.Dec. 737, 694 N.E.2d 1015, 1020 (1st Dist.1998). However, that court expressly recognized that its interpretation of the law placed it squarely at odds with the law in some other jurisdictions, including Florida and the Eleventh Circuit. *Sims*, 296 Ill.App.3d *at* 511, 694 N.E.2d at 1020. The decision is therefore not binding or persuasive in this Court.

### 6. Summary

Based on the analysis set forth above, the Court finds that DuPont's motion for judgment on the pleadings based on reasonable reliance should be granted and that it serves as an alternative reason for dismissing Plaintiffs' fraud claims (Counts One, Two, Three, and Five). DuPont mentioned in a footnote of its initial brief in support of its motion for judgment on the pleadings based on reasonable reliance (*see* p. 7 n. 3 of the October 10, 2000 brief) that

the federal RICO claims and tort claims other than fraud require that Plaintiffs prove proximate cause, and that, to the extent Plaintiffs' fraud claims fail as a matter of law for lack of justifiable reliance, their other claims fail as well. This argument was not fully developed by either party, and the Court is reluctant to pass on it without giving the parties an opportunity to further address the matter. The limited treatment given to this topic by DuPont does not carry its burden of convincing the Court that extending the holding of this order to Plaintiffs' remaining claims is appropriate at this time.

### IV. Conclusion

DuPont's motions for judgment on the pleadings based on litigation conduct and reasonable reliance, filed only in Case No. 98–2246–Civ–Gold and resolved based on the pleadings in that case, specifically the First Amended Complaint, Answer and Counterclaim, and Reply, are granted in part and denied in part. Of the thirteen counts contained in the Amended Complaint, only Counts Six, Seven, and Twelve remain viable causes of action.

It is the opinion of this Court that, even though the disposition of the motions for judgment on the pleadings in this case does not completely dispose of all the matters in dispute between the parties, an immediate appeal to the Eleventh Circuit Court of Appeals is appropriate and should be permitted, by either or both parties. Pursuant to 28 U.S.C. § 1292(b), the district court may certify that an order is appropriate for interlocutory appeal if the court believes that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The mo-

tions decided by this Order were filed in only one of 34 consolidated Benlate settlement fraud cases that are currently pending before this court, but the implications are significant for all of the cases. Reasonable jurists could disagree with this Court's interpretation of the Florida and Eleventh Circuit precedent regarding litigation conduct and reasonable reliance, and there is also a substantial question regarding the applicability of this decision to the remaining Benlate settlement fraud cases. Moreover, this Court has considered conducting a common issues trial in these consolidated cases, and resolution by the Court of Appeals of the appeal of this order through an interlocutory appeal will substantially assist in settling the issues involved in such a trial. This Court therefore certifies that an immediate appeal is in the best interests of materially advancing the ultimate termination of these lawsuits.

Accordingly, it is

**ORDERED AND ADJUDGED** that *DuPont's Motion for Judgment on the Pleadings As to All Damages Claims Based on Litigation Conduct,* filed on September 20, 2000, and *DuPont's Motion for Judgment on the Pleadings Based on Plaintiff's Inability to Establish Reasonable Reliance as a Matter of Law,* filed on October 10, 2000, are GRANTED IN PART AND DENIED IN PART, as set forth above. Counts One, Two, Three, Four, Five, Eight, Nine, Ten, Eleven, and Thirteen are DISMISSED, and Counts Six, Seven, and Twelve remain. It is further

**ORDERED AND ADJUDGED** that a separate order setting a status conference in this matter will be issued by the Court.