**FLORIDA EVERGREEN FOLIAGE**
and Louis Chang, Plaintiffs,

v.

**E.I. DU PONT DE NEMOURS AND
COMPANY, Defendant.**

No. 98–2256–CIV.

United States District Court,
S.D. Florida.

Aug. 24, 2001.

Sean L. Moore, Esq., Fort Lauderdale, FL, A. Camden Lewis, Esq., Thomas A. Pendarvis, Esq., Lewis, Babcock & Hawkins, LLP, Columbia, SC, Stephen T. Cox, Esq., David W. Moyer, Esq., Cox & Moyer, San Francisco, CA, for Plaintiffs.

Edward Moss, Esq., Shook, Hardy & Bacon, LLP, Miami, FL, A. Stephens Clay, Esq., William H. Boice, Esq., James F. Bogan, III, Esq., Kilpatrick Stockton LLP, Atlanta, GA, Alice Hector, Esq., Lance Harke, Esq., Hector & Harke LLP, Miami, FL, for Defendants.

### ORDER ON DUPONT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFFS' RICO AND SPOLIATION CLAIMS

GOLD, District Judge.

THIS CAUSE is before the Court upon the following motions:

- DuPont's Motion for Judgment on the Pleadings As to Plaintiffs' RICO Claims,[1] filed on May 9, 2001, along with a separate brief in support of the motion. On June 10, 2001, DuPont filed a Notice of Intervening Authori-

---

1. The motions for judgment on the pleadings that form the subject of this order come to the Court in the same procedural posture as the motions for judgment on the pleadings ruled upon by this Court on March 8, 2001. *See Florida Evergreen Foliage v. E.I. DuPont De Nemours*, 135 F.Supp.2d 1271 (S.D.Fla.2001). Just as was noted in that opinion, the motions for judgment on the pleadings were filed as case-specific pleadings in Case No. 98–2256– Civ–Gold. Case No. 98–2256–Civ–Gold is one of 34 related pending cases before this Court, all of which concern the same subject matter. DuPont is a defendant in 25 of these cases, including Case No. 98–2256–Civ–Gold, and a plaintiff in nine others. The Court has generally referred to the Claimant Growers as "Plaintiffs" or "Plaintiff–Growers," and DuPont as "Defendant," and will do so in this order.

ty.[2] Plaintiff–Growers filed an *Opposition* on June 28, 2001. DuPont filed a *Reply* on July 20, 2001.

- *DuPont's Motion for Judgment on the Pleadings As to Plaintiffs' Spoliation Claim,* filed on May 9, 2001. Plaintiff–Growers filed an *Opposition* on June 28, 2001, and DuPont filed a *Reply* on July 20, 2001.

- *Plaintiff–Growers' Motion to Amend their First Amended Complaint,* filed on August 1, 2001. DuPont filed a response memorandum setting forth its position regarding the effect of Plaintiffs' motion to amend on August 10, 2001, and Plaintiffs filed a reply memorandum regarding the effect of the pending motion to amend on August 21, 2001.

Oral arguments on the motions for judgment on the pleadings were held on August 3, 2001.

DuPont seeks dismissal of Counts Six (Racketeering in violation of 18 U.S.C. § 1962(c)), Seven (Violation of 18 U.S.C. § 1962(d) by Conspiracy to Violate 18 U.S.C. § 1962(c)), and Twelve (Spoliation of Evidence) pursuant to Federal Rule of Civil Procedure 12(c).[3] After careful consideration of the parties' arguments, the applicable case law, and the record as a whole, the Court concludes that DuPont's Motion for Judgment on the Pleadings As to Plaintiffs' Rico Claims and DuPont's Motion for Judgment on the Pleadings as to Plaintiffs' Spoliation Claim should both be granted, and that Plaintiffs' Motion to Amend the Complaint should be denied at

this time. Furthermore, as explained in the conclusion of this Order, the Court certifies that an interlocutory appeal by either or both parties is appropriate as to this Order.

## I. Background

The First Amended Complaint [D.E. 2], filed on October 22, 1998, contains thirteen claims for relief, as follows: Count 1, fraud; Count 2, intentional nondisclosure of material facts; Count 3, fraudulent inducement to settle; Count 4, fraud on the court under Fed.R.Civ.P. 60(b); Count 5, rescission and damages for fraud; Count 6, racketeering in violation of 18 U.S.C. § 1962(c); Count 7, violation of 18 U.S.C. § 1962(d) by conspiracy to violate 18 U.S.C. § 1962(c); Count 8, conspiracy; Count 9, abuse of process; Count 10, infliction of emotional distress; Count 11, interference with prospective economic advantage; Count 12, spoliation of evidence; and Count 13, violation of the Florida Deceptive and Unfair Trade Practices Act. Defendant DuPont filed a Counterclaim and Answer [D.E. 106] on May 24, 2000, and Plaintiff–Growers filed an Answer to DuPont's Counterclaim [D.E. 114] on June 13, 2000. In addition, Plaintiff–Growers filed a Local Rule 12.1 Civil Rico Case Statement on October 22, 1998 and a Local Rule 12.1 First Supplemental Civil Rico Case Statement on June 26, 2001. Both parties relied upon the Plaintiff–Growers' RICO Case Statements in conjunction with these matters, and the Court considered them as part of the pleadings relied upon to resolve the pending motions. In considering the

---

**2.** The Notice of Intervening Authority referred to *Cedric Kushner Promotions, Ltd. v. King,* ⸺ U.S. ⸺, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001).

**3.** Federal Rule of Civil Procedure 12(c) states:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

pleadings, all ambiguities and inferences were interpreted in the light most favorable to the Plaintiff–Growers.

The Court set forth the background of this dispute in its March 8, 2001 Order on DuPont's Motions for Judgment on the Pleadings [D.E. 224] (the "March 8, 2001 Order"), and that order is incorporated herein by reference. *See Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 135 F.Supp.2d 1271, 1274–76 (S.D.Fla.2001). In sum, Plaintiffs' claims arise out of a prior lawsuit filed in Florida state court in 1992, in which Plaintiffs alleged products liability based on property damage caused by DuPont's fungicide Benlate and actual fraud claims based on DuPont's alleged concealment of Benlate's defects (the "Underlying Lawsuit"). In 1994, Plaintiffs settled these underlying claims and eventually dismissed their lawsuit with prejudice.

Plaintiffs then filed the instant action, alleging that during the course of the litigation of the Underlying Lawsuit, DuPont wrongfully, illegally, and fraudulently withheld from discovery vital scientific data and information that DuPont was under an obligation to produce in the Underlying Lawsuit and in other related Benlate litigation being conducted simultaneously in other courts, which Plaintiffs' attorneys were monitoring, and gave false testimony in other Benlate cases about Benlate's alleged defects. Plaintiffs allege that DuPont withheld the information and made false statements in the implementation of a scheme to defraud Plaintiffs and others who had used Benlate and suffered resulting damage. As a result of the scheme and fraud, Plaintiffs allege that they were induced to settle the Underlying Lawsuit for less money than they would have otherwise insisted upon and been able to obtain.

The Court's March 8, 2001 Order granted in part and denied in part DuPont's previous motions for judgment on the pleadings. Counts One, Two, Three, Four, Five, Eight, Nine, Ten, Eleven, and Thirteen were dismissed. With respect to Counts Six and Seven, the civil RICO claims, the Court denied DuPont's motion for judgment on the pleadings based on litigation conduct, and deferred from reaching the issue under DuPont's motion for judgment on the pleadings based on reasonable reliance because the parties had not fully addressed the RICO claims in that context. Count Twelve, spoliation, was not addressed by the previous motions for judgment on the pleadings.

## II. Standard of Review

Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law. *See Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir.1996). When reviewing judgment on the pleadings, the court must take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.* at 1524. A complaint may not be dismissed on a motion for judgment on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998). The pleadings considered by the court on a motion for judgment on the pleadings include the complaint, answers, counterclaim, and cross-claim, if any. *See Santmyer v. Prudential Ins. Co. of Am.*, 761 F.Supp. 114, 117 (M.D.Fla.1991).

## III. Discussion

### A. Counts Six and Seven: Plaintiffs' RICO Claims

Plaintiffs seek relief in Counts Six and Seven for violations of the federal civil

RICO act, 18 U.S.C. § 1962(c) and (d).[4] Plaintiffs allege that mail fraud, in violation of 18 U.S.C. § 1341, wire fraud, in violation of 18 U.S.C. § 1343, obstruction of justice, in violation of 18 U.S.C. § 1503, and tampering with witnesses, in violation of 18 U.S.C. § 1512, constitute the relevant "predicate offenses" for a civil RICO action. The Amended Complaint alleges that DuPont formed an enterprise with others for the purpose of defrauding the Benlate claimants, including the above named Plaintiffs, in order to diminish the value of the Benlate claimants' claims. The offending conduct is alleged to include intentional concealment of the Alta Labs documents and data; the BAM and BPM documents (concerning Benlate testing by other labs-*see* First Amended Complaint ¶¶ 146–190), the test results identifying contamination in the Bartlo lots, and the Costa Rica testing information, misleading and fraudulent answers to discovery requests, false and deceptive responses to court orders to produce, and false deposition testimony and statements by DuPont's attorneys to the courts in *Bush Ranch v. DuPont*, No. 4:95–CV–36(JRE), United States District for the Middle District of Georgia, *Kawamata v. United Agri Products*, Civ. No. 91–437, Circuit Court of the Third Circuit, State of Hawaii, *Tomono v. DuPont*, Civ. No. 92–247K, Circuit Court of the Third Circuit, State of Hawaii, *Billy Lambert v. DuPont*, Florida Circuit Court, *Ritter–Whitworth v. DuPont*, Florida Circuit Court, *Smith v. DuPont*, Florida Circuit Court, and *Davis Tree Farms, Inc. v. DuPont*, Florida Circuit Court, as well as intimidating and impeding witnesses in the *Bush Ranch v. DuPont*, *Native Hammock, Inc. v. DuPont* and *Asia Pacific v. DuPont* cases.

■ The provisions of 18 U.S.C. § 1961, *et seq.* (the RICO Act) provide civil and criminal liability for persons engaged in "a pattern of racketeering activity." *See* 18 U.S.C. § 1962(a-d). Persons injured by reasons of a RICO violation have a civil cause of action under the terms of the act. *See* 18 U.S.C. § 1964. The four elements of civil RICO liability are (1)conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation omitted). Plaintiffs in such an action must identify and prove a pattern of racketeering activity, defined as two "predicate acts" of racketeering activity within a 10 year period. *See* 18 U.S.C. § 1961(5). The phrase "racketeering activity" is defined as including any act which is indictable under a lengthy list of criminal offenses, including the federal statutes prohibiting mail and wire fraud, obstruction of justice, and tampering with witnesses. *See* 18 U.S.C. § 1961(1).

DuPont has advanced three arguments for dismissal of the Plaintiff–Growers' RICO claims that the Court finds persuasive and dispositive.[5] The first two argu-

---

4. In relevant part, 18 U.S.C. § 1962 provides:

 (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

5. DuPont also argued in its pleadings and before the Court at oral argument that Count Six and Seven should be dismissed because Plaintiffs' fail to articulate a cognizable RICO enterprise, fail to properly allege that they have suffered injury to their business or property, and fail to allege any conduct by DuPont that was intended to achieve a benefit to DuPont that was external to the Underlying Litigation. Because the Court finds the three arguments set forth below dispositive, DuPont's remaining arguments have not been reached.

ments focus on the predicate act requirements of a civil RICO action. DuPont argues first that the mail fraud and wire fraud allegations fail as predicate acts because Plaintiffs cannot establish reasonable reliance, and second, that the obstruction of justice and intimidation of witness claims fail as predicate acts because Plaintiffs do not meet the proximate cause standards required by the applicable precedent. DuPont submits that if these arguments prevail, then Plaintiffs have failed to allege valid predicate acts, and the RICO claims fail. Third, DuPont argues that Plaintiffs' claims are separately and independently barred by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), at 18 U.S.C. § 1964(c).[6] As explained more fully below, dismissal of Counts Six and Seven is both necessary and appropriate on these grounds.

### 1. RICO Predicate Acts

■ DuPont's arguments with respect to the predicate act requirements of RICO focus on Plaintiffs' failure to allege injuries proximately and directly caused by DuPont's alleged racketeering activity. In order for a pattern of racketeering activity to be a cognizable cause of civil RICO injury to a private plaintiff, one or more of the predicate acts must not only be the 'but for' cause of the injury, but the proximate cause as well. *See Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1317–18, 117 L.Ed.2d 532 (1992); *Beck v. Prupis*, 162 F.3d 1090, 1095–96 (11th Cir.1998). A wrongful act is "a proximate cause if it is a substantial factor in the sequence of responsible causation." *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir.1994) (internal quotation omitted); *see also Brandenburg v. Seidel,*

859 F.2d 1179, 1189 (4th Cir.1988) (stating that the inquiry in determining the existence of proximate cause is "whether the conduct has been so significant and important a cause that the defendant should be held responsible"). Plaintiffs must show a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes,* 503 U.S. at 268, 112 S.Ct. at 1318.

### a. Mail and Wire Fraud

■ As noted above, Plaintiff–Growers allege that mail and wire fraud (along with obstruction of justice and tampering with witnesses, which are addressed separately) constituted the relevant "predicate offenses" for the instant civil RICO action. The substantive elements of mail and wire fraud are identical (the only difference between the two offenses being their jurisdictional basis). *See Beck,* 162 F.3d at 1095. Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme. *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir. 1991).

■ To demonstrate a violation of the mail or wire fraud statutes, Plaintiffs must show that DuPont, "had a conscious, knowing intent to defraud and that a reasonably prudent person would have been deceived by [DuPont's] misrepresentations," *Pelletier,* 921 F.2d at 1503, and that the Plaintiffs in fact did suffer injury and rely to their detriment on the misrepresentations, *see id.* at 1499. Thus, in order to establish proximate causation in a civil RICO action predicated on fraud, the purported victim must make the same showing of reasonable reliance that is required for establishing injury from common law fraud. *See*

---

**6.** 18 U.S.C. § 1964(c) provides, in pertinent part, that "no person may rely upon any conduct that would have been actionable as

fraud in the purchase or sale of securities to establish a violation of section 1962."

*Pelletier,* 921 F.2d at 1499 ("Mail and wire fraud, just like common law fraud, ... entail 'an intention to induce the [victim] to act or to refrain from action in reliance upon the misrepresentation.'") (*citing* Prosser and Keeton on Torts 728 (5th ed.1984)); *Beck,* 162 F.3d at 1095 (stating that RICO fraud claims require that the plaintiff "prove that a reasonable person would have relied on the misrepresentation"). Furthermore, several other circuits recognize that a racketeering claimant must reasonably rely upon alleged mail or wire fraud to satisfy RICO's proximate cause requirements. *See, e.g., In re EDC, Inc.,* 930 F.2d 1275, 1280 (7th Cir.1991) (stating that the civil RICO claimants in the case, "can complain only of misrepresentations which were made to them and on which they reasonably relied"); *Chisolm v. TranSouth Fin. Corp.,* 95 F.3d 331, 337 (4th Cir.1996) (stating that in civil RICO fraud actions, "the plaintiff must have justifiably relied, to his detriment, on the defendant's material misrepresentation").

■ The Court's March 8, 2001 Order granted DuPont's motion for judgment on the pleadings based on Plaintiffs' inability to establish reasonable reliance, finding that Plaintiffs' fraud claims (Counts One, Two, Three, and Five) failed as a matter of law. *See Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.,* 135 F.Supp.2d 1271, 1289–97 (S.D.Fla.2001).

That Order relied primarily on *Mergens v. Dreyfoos,* 166 F.3d 1114 (11th Cir.1999) and its progeny for the proposition that, "when negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest party." *Mergens,* 166 F.3d at 1118 (*quoting Pettinelli v. Danzig,* 722 F.2d 706, 710 (11th Cir.1984)). Just as Plaintiffs could not establish, as a matter of law, justifiable reliance with respect to Plaintiffs' fraud in the inducement claims, they also cannot establish, for the reasons set forth in the March 8, 2001 Order and incorporated herein, justifiable reliance with respect to Plaintiffs' RICO mail and wire fraud claims.[7]

Plaintiffs argue that the *Mergens/Pettinelli* rule is an anomaly of Florida state law that is inconsistent with tort law principles applied throughout most of the rest of the country, and that it would frustrate the purposes of RICO. The Court disagrees.

The *Mergens* decision represents the straightforward application of the reasonable reliance requirement to a particular factual setting: a setting in which the plaintiffs were sophisticated actors, the parties had been in an adversarial relationship since well before the execution of the agreement at issue, and the plaintiffs had entered into the agreement to settle an

**7.** With regard to the mail and wire fraud claims, the Court stated the following in the March 8, 2001 Order:

DuPont mentioned in a footnote of its initial brief in support of its motion for judgment on the pleadings based on reasonable reliance ... that the federal RICO claims and tort claims other than fraud require that Plaintiffs prove proximate cause, and that, to the extent Plaintiffs' fraud claims fail as a matter of law for lack of justifiable reliance, their other claims fail as well. This argument was not fully developed by either party, and the Court is reluctant to pass on it

without giving the parties an opportunity to further address the matter. The limited treatment given to this topic by DuPont does not carry its burden of convincing the Court that extending the holding of this order to Plaintiffs' remaining claims is appropriate at this time.

*Florida Evergreen,* 135 F.Supp.2d at 1297. The parties have now had an opportunity to present this issue directly to the Court, and DuPont's arguments regarding the applicability of the reasonable reliance standard to the federal RICO claims based on fraud are persuasive.

existing lawsuit that claimed fraud. *See Mergens,* 166 F.3d at 1118. The Eleventh Circuit found that in such a situation, a party has no legal right to rely on the representations of the other party, *id.,* and that such a finding is consistent with the applicable precedent. *See id.* ("[I]n factual situations substantially similar to this action, this Circuit and various district courts have held that the plaintiffs were unjustified in relying on representations made by the defendants.").

■ The fact that the *Mergens/Pettinelli* rule involved an interpretation of Florida state law does not invalidate the application of the state law interpretation of the reasonable reliance standard to this case. As the United States Supreme Court has instructed, "[t]he scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law." *De Sylva v. Ballentine,* 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956). Generally, unless there is a distinct need for uniform national standards or there are express provisions in analogous statutory schemes that clearly embody congressional policy choices readily applicable to the matter at hand, "federal courts should incorporate state law as the federal rule of decision, unless application of the particular state law in question would frustrate specific objectives of the federal programs." *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 98, 111 S.Ct. 1711, 1717, 114 L.Ed.2d 152 (1991) (internal quotation omitted).

■ In the RICO context, federal courts have consistently applied state law principles to interpret gaps in the federal RICO statute. *See, e.g., In re Sunrise Sec. Litig.,* 916 F.2d 874, 879–82 (3rd Cir. 1990) (applying Florida corporate law on shareholder derivative suits to determine standing in a federal RICO case); *Prince Heaton Enters., Inc. v. Buffalo's Fran.*

*Concepts, Inc.,* 117 F.Supp.2d 1357, 1362–63 (N.D.Ga.2000) (utilizing state law reasonable reliance principles to reject a federal civil RICO claim); *Harper v. American Tel. & Tel. Co.,* 54 F.Supp.2d 1371, 1382–84 (S.D.Ga.1999) (rejecting federal civil RICO mail and wire fraud claims for failure to demonstrate reasonable reliance). In fact, by its express terms, the RICO statute incorporates many state law offenses as predicate acts, and state courts have concurrent jurisdiction over civil RICO claims. *See* 18 U.S.C. § 1961(1)(A) (listing state law offenses constituting predicate acts); *Tafflin v. Levitt,* 493 U.S. 455, 465, 110 S.Ct. 792, 798, 107 L.Ed.2d 887 (1990) (noting that "many RICO cases involve asserted violations of state law, such as state fraud claims, over which state courts presumably have greater expertise"). It is thus appropriate for state law precedents on fraud law, such as *Mergens* and *Pettinelli,* to inform the disposition of federal civil RICO claims.

Plaintiff–Growers argue that application of the *Mergens/Pettinelli* rule to civil RICO cases would frustrate the purposes of RICO because the RICO statute is designed to expand the remedies available under state law to victims of racketeering. Generally, "unless state law on the issue . . . is inconsistent with the federal policy underlying RICO, it should not be displaced simply because plaintiffs base their claim on a federal statute." *In re Sunrise Sec. Litig.,* 916 F.2d at 879. "A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation." *Burks v. Lasker,* 441 U.S. 471, 479, 99 S.Ct. 1831, 1838, 60 L.Ed.2d 404 (1979) (citation omitted). Under this policy, state rules that are unreasonable, specifically aberrant or hostile to the federal right at issue will not be applied. *Id.* In this case, requiring the Plaintiffs to prove proximate causation and justifiable reliance is not a

new rule, and the incorporation of state law justifiable reliance concepts is consistent with prior precedent. Enforcing these requirements is therefore not incompatible with the policies underlying the statute.

### b. Obstruction of Justice and Intimidation of Witnesses

■ Accepting that mail and wire fraud are eliminated as predicate acts because reasonable reliance is a requirement to prove mail fraud or wire fraud, as the analysis set forth above demonstrates, and reasonable reliance cannot be shown under the Plaintiffs' allegations, as set forth in the March 8, 2001 Order, Plaintiffs' are left with their allegations of obstruction of justice and intimidation of witnesses as the alleged predicate acts. DuPont concedes that reasonable reliance is not an issue with respect to obstruction of justice and intimidation of witnesses.

As an initial matter, the Court observes that the federal obstruction and witness intimidation claims are only applicable to federal proceedings. *See Florida Evergreen*, 135 F.Supp.2d at 1286 n. 10 ("[S]everal federal courts have held that 18 U.S.C. §§ 1503 [obstruction of justice] and 1512 [tampering with witnesses] do not apply to state court proceedings.") (*citing O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 707 (2nd Cir.1990) and *Park South Assoc. v. Fischbein*, 626 F.Supp. 1108, 1113 (S.D.N.Y.1986)). The only federal case in which Plaintiffs allege any of the predicate acts took place is *Bush Ranch v. DuPont*, No. 4:95–CV–36(JRE), in the United States District Court for the Middle District of Georgia. Accordingly, the federal obstruction and witness intimidation claims are only actionable to the extent that they relate to the *Bush Ranch* case. Plaintiffs were not parties to the *Busch Ranch* case, but allege that their attorneys were monitoring other Benlate litigation, including the *Bush Ranch* case,

and were in close contact with other Benlate plaintiffs' attorneys around the country. Amended Complaint, ¶¶ 2, 94, 97, 106; *see also Florida Evergreen*, 135 F.Supp.2d at 1292.

DuPont argues that the Plaintiffs cannot show that the alleged predicate acts, which took place in the *Bush Ranch* case, were the proximate cause of their injury. In support of this argument, DuPont relies primarily on *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), and *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898 (11th Cir.1998). In *Holmes*, the United States Supreme Court articulated the proximate cause requirement in federal civil RICO cases, describing it as a "direct relation between the injury asserted and the injurious conduct alleged," and acknowledging that, "a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. at 268–69, 112 S.Ct. at 1318. Part of the rationale for the proximate causation requirement is: (a) difficulty in ascertaining the amount of the plaintiff's damages attributable to the violation as the injury becomes less direct; (b) difficulty in apportioning damages amongst plaintiffs removed at different levels of injury from the violative acts; and (3) the likelihood that directly injured victims will act to vindicate the law as private attorneys. *Id.* at 269–70, 112 S.Ct. at 1318. The *Bivens* case is applicable to the extent the Eleventh Circuit emphasized that RICO standing must be interpreted narrowly and in accordance with *Holmes*, and that only injuries directly caused by the RICO violation are actionable. *See Bivens*, 140 F.3d at 908.

Plaintiffs argue in response that they have adequately alleged in their Local Rule 12.1 First Supplemental Civil Rico Case Statement that they were directly injured by DuPont's misrepresentations in the *Bush Ranch* case. According to Plaintiffs, DuPont certainly knew that the Plaintiffs were monitoring the evidence presented in the *Bush Ranch* case, and DuPont's racketeering activities were intended to hide and falsify evidence presented in the *Bush Ranch* case in order to defeat cases throughout the country. In support, Plaintiffs specifically refer to the language used by Judge Elliot in his August 25, 1995, sanctions opinion: "Having heard and reviewed all of the relevant evidence, the Court concludes that DuPont, in light of the hundreds of claims and lawsuits which had arisen out of the use of its product Benlate 50DF, decided that it would not reveal the potentially damaging evidence generated by the Alta tests." *In re E.I. duPont de Nemours & Co.,* 918 F.Supp. 1524, 1555 (M.D.Ga.1995), *rev'd,* 99 F.3d 363 (11th Cir.1996).

The Court agrees with DuPont's arguments that the alleged injuries to the Plaintiffs in this case are too remote to satisfy civil RICO's proximate cause requirements. The parties who were directly injured by DuPont's actions in the *Bush Ranch* case were the *Bush Ranch* plaintiffs and the allegedly defrauded court. For reasons of policy, practicality and proof, RICO prefers that those who were directly injured "vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely," *Holmes,* 503 U.S. at 269–70, 112 S.Ct. at 1318, and those who were injured more directly have indeed done so in this case. *See Florida Evergreen,* 135 F.Supp.2d at 1283 ("DuPont has already been subject to reprimands and monetary sanctions for its actions by some of the courts in which it is alleged to have committed its tortious behavior."). Even

accepting Plaintiffs' allegations as true and interpreting them in the light most favorable to the Plaintiffs, it is clear that DuPont's actions were directed primarily at the *Bush Ranch* litigants, with the anticipation that other parties might rely on or be influenced by what happened in the *Bush Ranch* case. As noted by the Eleventh Circuit, "the test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable." *Bivens,* 140 F.3d at 908. Plaintiffs' arguments that it must have known its scheme would impact other cases around the country and their presentation of a laundry list of allegedly fraudulent discovery practices in *Bush Ranch* and other Benlate litigations in the Supplemental RICO Case Statement do not satisfy RICO's directness requirement.

Furthermore, Plaintiffs' reliance on Judge Elliot's findings and conclusions in the August 25, 1995 *Bush Ranch* sanction opinion is improper. As noted by this Court in *Gutter v. E.I. Dupont De Nemours,* 124 F.Supp.2d 1291, 1295 (S.D.Fla. 2000), the Eleventh Circuit reversed and remanded the Georgia district court's sanction opinion on the ground that the sanctions were punitive and that the district court had not followed applicable criminal procedures. Although this Court relied tangentially on the *Bush Ranch* findings in the September 20, 2000 *Gutter* opinion, it did so only to the extent that those findings were adopted by the Hawaii Circuit Court and Hawaii Supreme Court, which considered the complete transcript of Judge Elliot's hearing. *See Gutter,* 124 F.Supp.2d at 1297 n. 4. The Eleventh Circuit did not adopt the factual findings of the Georgia district court, and it would be error for the Court to rely on those factual findings, standing alone, to support Plaintiffs' arguments in this case.

Accordingly, the Court finds that Plaintiffs have failed to adequately allege justifiable reliance on acts of mail and/or wire fraud, and have not adequately stated sufficient proximate cause between the alleged acts of obstruction of justice and witness tampering in *Bush Ranch v. DuPont* and the Plaintiffs' injuries. Thus, absent any valid predicate acts, the Plaintiffs have failed to state a valid claim for RICO violations. Both Counts Six and Seven must therefore be dismissed. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3rd Cir.1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

### 2. Reform Act Bar

■ DuPont argues, as a separate and independent grounds for granting judgment on the pleadings in its favor, that Plaintiffs' RICO claims are barred by Section 107 of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), codified at 18 U.S.C. § 1964(c). Specifically, DuPont relies on the language providing that, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962," unless the person who committed such fraudulent conduct has been criminally convicted. 18 U.S.C. § 1964(c) & Historical and Statutory Notes appended thereto. DuPont argues that the Plaintiffs' civil RICO claims are subject to dismissal since the conduct relied upon by the Plaintiffs to support their racketeering claims is also the subject of *Gutter v. DuPont,* Case No. 95–2152–Civ–Gold, a certified securities fraud class action currently pending before this Court.

In enacting the 1995 Amendments to the PLSRA, Congress sought to remove any conduct that would have been actionable as fraud in the purchase or sale of securities

as racketeering activity under civil RICO. *District 65 Retirement Trust for Members of Bureau of Wholesale Sales Reps. v. Prudential Secs., Inc.*, 925 F.Supp. 1551, 1567 (N.D.Ga.1996) (*quoting* 141 Cong. Rec. H13691–08, H13704 (Nov. 28, 1995)). The amendment eliminated securities fraud as a predicate offense, as well as other specified offenses, such as mail or wire fraud, if such offenses are based on conduct that would have been actionable as securities fraud. *Id.*

In this case, the Court has before it the type of situation contemplated by the Section 107 bar: one in which the same conduct giving rise to the present lawsuit is alleged to be securities fraud. *See Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3rd Cir.1999); *Howard v. America Online Inc.*, 208 F.3d 741, 749–50 (9th Cir.2000); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F.Supp.2d 481, 486–87 (E.D.Pa.2000). In addition to Case No. 98–2256–Civ–Gold and the consolidated related Benlate settlement fraud cases that are pending before this Court, this Court also has before it a pending Benlate securities fraud action, *Gutter v. E.I. Dupont De Nemours*. The *Gutter* action alleges that DuPont and its former CEO violated securities laws "by concealing and misrepresenting material facts regarding the likelihood and magnitude of DuPont's potential liability in connection with thousands of product liability lawsuits regarding a DuPont agricultural product called Benlate." *Gutter v. E.I. Dupont De Nemours*, 124 F.Supp.2d 1291, 1295 (S.D.Fla.2000). Similarly, the instant action "alleges that during the course of the litigation of the Underlying Lawsuit, DuPont wrongfully, illegally, and fraudulently withheld from discovery vital scientific data and information ... and made false statements in implementation of a scheme to defraud Plaintiffs and others who had used Benlate ...." *Florida*

*Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 135 F.Supp.2d 1271, 1275–76 (S.D.Fla.2001); *see also* Compl. ¶ 45. Moreover, not only do the *Gutter* action and this action allege the same type of concealment, but they both also concentrate on the same concealment activities: (1) "DuPont Field Tests" (*compare Gutter,* Compl. ¶¶ 32–33, 35, *with Green Leaf,* Compl. ¶¶ 45, 48); (2) "Costa Rica tests" (*compare Gutter,* Compl. ¶¶ 33–35, 92, *with Green Leaf,* Compl. ¶¶ 191–227); (3) *"Bush Ranch—ALTA data"* (*compare Gutter,* Compl. ¶¶ 42–58, 97, *with Green Leaf,* Compl. ¶¶ 49, 52–97); (4) *"Lambert—ALTA data"* (*compare Gutter,* Compl. ¶¶ 67–71, 97, *with Green Leaf,* Compl. ¶¶ 98–104); (5) *"Ritter/Whitworth—ALTA data"* (*compare Gutter,* Compl. ¶¶ 72–79, 97, *with Green Leaf,* Compl. ¶¶ 137–45); and (6) *"Kawamata/Tomono"* (*compare Gutter,* Compl. ¶¶ 88–90, *with Green Leaf,* Compl. ¶¶ 105–36). Accordingly, because the conduct upon which Plaintiffs rely in this case parallels the conduct that underlies the *Gutter* Benlate securities fraud action, it is appropriate to apply the PLSRA bar to effectuate dismissal of the RICO claims.

Plaintiffs have raised five arguments in opposition to the application of the PLSRA bar to Counts Six and Seven, as follows: (1) the legislative history of the act indicates an intention to target abusive practices not present in Plaintiff's action; (2) the act only operates to bar civil RICO claims if the claims could be actionable by the same plaintiff; (3) the predicate acts of racketeering upon which the RICO claims is brought are sufficiently removed from any securities violation which would trigger the bar; (4) even if the PLSRA bar is implicated, DuPont's criminal culpability lifts the bar; and (5) the act does not apply retroactively. None of Plaintiffs' arguments are persuasive.

First, Plaintiffs argue that the legislative history of the act clearly indicates an intention to target abusive practices not present in the Plaintiffs' action, i.e., that the purpose of the act was to prevent securities litigation from becoming inundated with abusive and meritless suits. However, nothing in the plain language of 18 U.S.C. § 1964(c) indicates any delineation between "abusive" and "non-abusive" suits; the statute clearly provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." Moreover, the very authority cited by Plaintiff, *Rowe v. Marietta Corp.,* 955 F.Supp. 836, 847 (W.D.Tenn.1997) (*citing* Testimony of Hon. Arthur Levitt, Chairman of the SEC, Hearings on H.R. 10, the Common Sense Legal Reform Act of 1995, before the Telecommunications and Finance Subcommittee of the House Commerce Committee, February 10, 1995, *reprinted in* 1996 U.S.C.C.A.N. 679, 746), stands for the proposition that the PLSRA bar was meant to protect defendants from overlapping exposure under the federal securities laws and the PLSRA for the same underlying conduct. Therefore, application of the Section 107 bar in this case is consistent with the PLSRA's legislative purposes.

Second, Plaintiffs argue that Section 107 only operates to bar civil RICO claims if the claims could be actionable by the same plaintiff. However, Plaintiffs have done nothing to distinguish *Howard v. America Online Inc.,* 208 F.3d 741 (9th Cir.2000), and the Court finds that case persuasive. In *Howard,* a group of AOL subscribers claimed that AOL committed securities fraud as part of a pattern of racketeering activity. The Ninth Circuit Court of Appeals held that Section 107 of the PSLRA, codified at 18 U.S.C. § 1964(c), acted to bar their claim despite the fact that the named plaintiffs did not have standing to

bring a securities fraud claim against AOL because the alleged conduct "could be brought by a plaintiff with proper standing." *Howard*, 208 F.3d at 749. Similarly, the fact that Plaintiff–Growers are not DuPont shareholders and therefore cannot bring a securities fraud claim against DuPont does not preclude the use of Section 107 to bar their claim.

Third, Plaintiffs claim that there are differences between their case and *Gutter* sufficient to defeat operation of the Section 107 bar. However, as noted above, both cases are based on the same underlying conduct. The basic theories of concealment of evidence and misrepresentation are parallel, and both complaints rely on the same six episodes of alleged concealment. As such, Plaintiffs' attempts to distinguish the two cases are unavailing. Furthermore, the primary case relied upon by Plaintiffs to support their argument, *Florida Dep't Ins. v. Debenture Guar.*, 921 F.Supp. 750 (M.D.Fla.1996), was filed on November 6, 1995 (*see Florida Dep't Ins.*, 921 F.Supp. at 752), whereas the applicable amendments to the PLSRA did not become effective until December 22, 1995 (*see* 18 U.S.C. § 1964(c)). As such, Section 107 was not applicable to *Florida Dep't Ins.*, and the fact that the district court permitted a complaint to proceed that contained both securities fraud and civil RICO claims is of no matter.

Fourth, Plaintiffs argue that DuPont's criminal culpability should serve to lift the bar and allow all civil RICO claims to progress unmolested. However, Section 107's criminal conviction exception only applies to persons that have been criminally convicted in connection with the fraud, and DuPont has not been criminally convicted. *See, e.g., Krear v. Malek*, 961 F.Supp. 1065, 1076 (E.D.Mich.1997) ("[T]he exception is only available to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud.").

Fifth, Plaintiffs argue that the act does not apply retroactively, and therefore does not apply to this cause of action, since the complaint is based, at least in part, on conduct that occurred before the December 22, 1995, effective date of the amendments to the PSLRA. This precise argument was addressed and rejected by the District Court, K. Michael Moore, J., in *Kolfenbach v. Mansour*, 36 F.Supp.2d 1351 (S.D.Fla.1999). In *Kolfenbach*, the plaintiff filed a twelve-count complaint that attempted to predicate federal RICO violations on misconduct allegations that were also the subject of a federal securities fraud claim. Because the *Kolfenbach* complaint was filed on February 23, 1998, well after the effective date of the 1995 Reform Act, the defendants moved to dismiss the RICO claims based on the Section 107 bar. Plaintiff argued in response that application of § 1964(c) to bar his case would be an impermissible retroactive application of the statute because the alleged misconduct took place before the 1995 Reform Act took effect. The District Court applied the retroactivity analysis set forth by the United States Supreme Court in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994),[8] to find

---

8. The *Landgraf* Court stated:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result. *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505.

that the plaintiff's action was barred by the 1995 Reform Act. *Kolfenbach,* 36 F.Supp.2d at 1353–54. The District Court found that retroactive application of the 1995 Reform Act would not impair the plaintiff's rights, since, "[i]f there was ever a right embodied in a securities fraud-based civil RICO cause of action, it was only the right to pursue a claim that had already been filed *before* the 1995 Reform Act came into effect." *Id.* at 1354 (emphasis in original).

Plaintiffs have advanced two arguments in opposition to the application of *Kolfenbach* to this case. First, Plaintiffs attempt to distinguish *Kolfenbach,* arguing that Plaintiff–Growers in the case at bar have no remedy if their RICO claims are dismissed, whereas in *Kolfenbach* the Court noted that "the Plaintiff will not be left without a remedy." *Kolfenbach,* 36 F.Supp.2d at 1354 n. 13. This argument is unavailing, as the Plaintiff–Growers have pursued several other non-RICO remedies in this action. Second, Plaintiffs cite the Court to *Scott v. Boos,* 215 F.3d 940 (9th Cir.2000), and argue that the Court should follow the reasoning of the Ninth Circuit, which applied the *Landgraf* analysis to find that the 1995 Reform Act did have a retroactive effect and that the definitive acts for purposes of retroactivity under the PSLRA are the dates of the defendants' conduct. *Scott,* 215 F.3d at 950. Indeed, the Ninth Circuit did address the same issue as the District Court addressed in *Kolfenbach,* and it reached a dichotomous result. However, this Court finds the reasoning set forth in *Kolfenbach* to be persuasive, and holds that retroactive application of Section 107 of the 1995 Reform Act, codified at 18 U.S.C. § 1964(c), will not have a retroactive effect because the instant complaint was filed after the 1995 Reform Act became effective.

## B. Count Twelve: Spoliation of Evidence

DuPont makes two arguments in support of dismissal of Count Twelve (Spoliation of Evidence): (1) the Florida Supreme Court has never recognized an independent tort for spoliation of evidence and the modern trend of authority is to reject a separate spoliation tort, so this Court should find that it is likely that the Florida Supreme Court would reject the Plaintiffs' cause of action; and (2) even if Florida did recognize an independent tort for spoliation of evidence, Plaintiffs have not pled and cannot prove the elements of a spoliation claim. Because the Court finds that DuPont's second argument is persuasive and that the Plaintiffs failed to plead the elements of a spoliation claim, DuPont's first argument need not be addressed.

### 1. Elements of the Spoliation of Evidence Claim

 Florida's intermediate appellate courts have recognized a separate tort of spoliation of evidence consisting of the following elements:

(1) the existence of a potential civil action;

(2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action;

(3) destruction of that evidence;

(4) significant impairment in the ability to prove the lawsuit;

(5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and

(6) damages.

*Florida Evergreen,* 135 F.Supp.2d at 1282 n. 7 (*citing Continental Ins. Co. v. Herman,* 576 So.2d 313, 315 (Fla. 3rd DCA 1990), *review denied by Herman v. Continental Ins. Co.,* 598 So.2d 76 (Fla.1991)); *Hagopian v. Publix Supermarkets, Inc.,*

788 So.2d 1088, 1091 (Fla. 4th DCA 2001) (*citing Herman,* 576 So.2d at 315); *St. Mary's Hosp. v. Brinson,* 685 So.2d 33, 35 (Fla. 4th DCA 1996) (adopting *Herman's* characterization of the necessary elements for spoliation of evidence).

### 2. Relevant Allegations

Plaintiff–Growers assert that their spoliation claim encompasses the destruction of test plants involved in field trials DuPont conducted in Costa Rica (the "Costa Rica field trials") and the concealment of that conduct, as well as the concealment of analytical testing conducted by Alta Analytical Laboratories (the "Alta information"). DuPont argues in opposition that the only relevant allegation has to with destruction of plants during the Costa Rica field trials (*see* Pl. Compl. ¶ 215), since 'concealment' of evidence is not actionable under Florida law. DuPont is correct.

As noted above, the elements of a spoliation of evidence claim in Florida include the "destruction" of evidence. Plaintiffs maintain in their opposition to DuPont's motion for judgment on the pleadings that "[c]oncealment is also spoliation." Pl. Opposition Memo. at 5. However, Plaintiffs rely exclusively on New Jersey law as it pertains to a New Jersey tort for "fraudulent concealment of evidence," *see id.* (*citing Rosenblit v. Zimmerman,* 166 N.J. 391, 766 A.2d 749, 758 (2001) and *Viviano v. CBS, Inc.,* 251 N.J.Super. 113, 597 A.2d 543, 550 (1991)), whereas the applicable law is Florida law of spoliation of evidence.

■ Plaintiffs have not identified, and the Court is not aware of, any Florida courts that have recognized a spoliation cause of action premised on "concealment," rather than "destruction," of evidence. *See, e.g., Aldrich v. Roche Biomedical Labs., Inc.,* 737 So.2d 1124 (Fla. 5th DCA 1999) ("Spoliation is defined as '[t]he intentional destruction of evidence and when it is established, fact finder may draw inference that evidence destroyed was unfavorable to party responsible for its spoliation. . . . The destruction, or the significant and meaningful alteration of a document or instrument.' ") (citation omitted). In fact, such an action would be inconsistent with Florida law granting absolute immunity to all litigation conduct occurring in the course of a judicial proceeding. *See Florida Evergreen,* 135 F.Supp.2d at 1278–83.

Accordingly, the Court must determine whether a spoliation of evidence claim predicated on the assertion that DuPont secretly tested Benlate in Costa Rica and destroyed the test plants upon observing unfavorable results (*see* Pl. Compl. ¶¶ 210–216) may state a viable claim for relief.

### 3. Impairment of Plaintiffs' Case

■ Florida courts recognize that a spoliation of evidence cause of action requires that the plaintiff "demonstrate that she was unable to prove her underlying action owing to the unavailability of the evidence." *Herman,* 576 So.2d at 315. In other words, the plaintiff must "suffer[ ] significant impairment in an ability to prove the underlying lawsuit." *Id.* While the question of whether an impairment is significant ordinarily presents a question of fact, it may be decided by the court as a matter of law where reasonable persons could not differ. *Id.* at 316. Spoliation actions typically involve the destruction of evidence that is absolutely crucial to the action. *See, e.g., Miller v. Allstate Ins. Co.,* 573 So.2d 24 (Fla. 3rd DCA 1990) (products liability action against auto manufacturer in which auto manufacturer destroyed allegedly defective automobile); *Hagopian v. Publix Supermarkets, Inc.,* 788 So.2d 1088 (Fla. 4th DCA 2001) (products liability action in which allegedly defective bottle was disposed of by defendant).

In this case, Plaintiffs' spoliation allegations are limited to the destruction of

plants involved in the Costa Rica field tests. Plaintiffs do not allege any destruction of the product at issue in the Underlying Lawsuit, Benlate; nor do they allege the destruction of the Plaintiffs' plants, which formed the basis for the Underlying Lawsuit, or any other essential evidence. At best, the Costa Rica field test plants could have been used to show relevant similar fact evidence, which would have been cumulative of the evidence already available to the Plaintiffs. Thus, no reasonable person could find that the destruction of the Costa Rica field test plants "significantly impaired" or otherwise rendered the Plaintiffs "unable to prove" their underlying case, as is required of a spoliation claim pursuant to Florida law. *See Herman,* 576 So.2d at 315.

### 4. Causation

Not only have Plaintiffs failed, as a matter of law, to allege facts that would show the required degree of impairment, they have also failed to allege the required causal link between the destruction of the Costa Rica field test plants and their alleged damages.

Plaintiffs' allegations place the cause of their damage (the agreement to settle their cases for amounts far below the settlement value that would have been reasonable otherwise) on DuPont's fraudulent concealment of the Costa Rica test and the documents and evidence associated with it. *See* Compl. ¶¶ 224, 225. Accordingly, it cannot be found, as a matter of law, that the fifth element of a spoliation of evidence claim ("a causal relationship between the evidence destruction and the inability to prove the lawsuit") can be established. As set forth in *Florida Evergreen,* DuPont's alleged concealment during the Underlying Lawsuit is immune litigation conduct, and is not actionable. *See Florida Evergreen,* 135 F.Supp.2d at 1278–83. Plaintiffs' damages must show that the actual destruction of the Costa Rica field test plants, not the concealment of evidence revealing the test results on those plants, led to their inability to prove their lawsuit. They have not set forth the ability to do so in this case; judgment in favor of DuPont is therefore warranted.

### C. Motion to Amend the First Amended Complaint

Plaintiff–Growers night-box filed a Motion to Amend [D.E. 323] on August 1, 2001, two days prior to the scheduled oral argument on DuPont's motions for judgment on the pleadings. The motion to amend seeks leave of Court, pursuant to Fed.R.Civ.P. 15, to amend the First Amended Complaint in all eighteen of the consolidated Plaintiff–Grower cases to: (a) consolidate the factual allegations, (b) add two causes of action alleging that DuPont has violated the Florida Civil Remedies for Criminal Practices Act ("Florida RICO"), Chapter 772 Florida Statutes, and (c) eliminate claims for Infliction of Emotional Distress, Interference with Prospective Economic Advantage, and Violation of Florida Deceptive and Unfair Trade Practices Act (Counts Ten, Eleven, and Thirteen of the First Amended Complaint). Plaintiffs have stated in their motion that virtually identical Second Amended Complaints will be filed in Hawaii.

Federal Rule of Civil Procedure 15 provides, in pertinent part, that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Although "[l]eave to amend shall be freely given when justice so requires," a motion to amend may be denied on "numerous grounds" such as "undue delay, undue prejudice to the defendants, and futility of the amendment." *Abramson v. Gonzalez,* 949 F.2d 1567, 1581 (11th Cir.1992). Furthermore, under

Fed.R.Civ.P. 15(c)(2), amendments of pleadings relate back to the date of the original pleading when the claim asserted in the amended pleading arises out of the same conduct, transaction, or occurrence set forth in the original pleading. *See* Fed.R.Civ.P. 15(c)(2).

Despite the liberal amendment provisions of Rule 15, it is inappropriate to grant Plaintiff–Growers' motion for leave to amend in this case.

 When the Eleventh Circuit Court of Appeals granted interlocutory review of this Court's March 8, 2001 Order on Du-Pont's motions for judgment on the pleadings based on litigation conduct and reasonable reliance, it divested this Court of jurisdiction to consider the motion to amend the complaint in Case No. 98–2256–Civ–Gold. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 401, 74 L.Ed.2d 225 (1982). Other federal courts that have addressed this issue typically disallow motions to amend a complaint at the district court level after a court of appeals accepts jurisdiction over an interlocutory appeal. *See, e.g., May v. Sheahan*, 226 F.3d 876, 878 (7th Cir.2000) ("As a general matter, a notice of appeal 'divests the district court of its control over those aspects of the case involved in the appeal,' [such that] the district court retains jurisdiction to act only if the order being appealed or the proceeding before the district court is a discrete matter ancillary to the issues under consideration in the other court.") (citations omitted); *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) ("When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction

over that aspect of the case. A district court does not have the power to 'alter the status of the case as it rests before the Court of Appeals.'") (citations omitted); *see also Hernandez v. Coughlin*, 18 F.3d 133, 138 (2nd Cir.1994) (once the plaintiff filed a notice of appeal of the order dismissing his case, jurisdiction was transferred to the Court of Appeals, and a "subsequent motion to file an amended complaint was therefore precluded because the district court was without jurisdiction to permit the amendment"). The proposed amendments seek to revise the factual allegations of the Complaint, delete certain claims that this Court has already ruled upon in the March 8, 2001 Order and which are now before the Eleventh Circuit Court of Appeals, and seeks to add new Florida RICO claims. Thus, permitting Plaintiffs to file a second amended complaint at this time would directly impact the issues on appeal, and the motion to amend in Case No. 98–2256–Civ–Gold must be disallowed.

Furthermore, despite the fact that the motions for judgment on the pleadings were case-specific, that this Court's current Order and March 8, 2001 Order were issued in Case No. 98–2256–Civ–Gold, and that the interlocutory appeal currently pending before the Eleventh Circuit Court of Appeals technically only involves Case No. 98–2256, the Court's previous 1292(b) certification recognizes that these rulings will seriously impact the disposition of the remaining 33 consolidated Benlate cases. Thus, as a practical matter, it does not make sense to permit the second amended complaint at this time. Permitting the Plaintiff–Growers to amend the complaints in the consolidated Benlate cases while denying the amendments in the lead case that is currently undergoing interlocutory review would unnecessarily confuse the issues in this litigation and waste judicial resources. The motion to amend is there-

1363

fore denied in Case No. 98–2256–Civ–Gold for lack of jurisdiction and denied without prejudice at this time in the remaining consolidated Benlate cases pending further direction from the Eleventh Circuit Court of Appeals.

## IV. Conclusion

DuPont's motions for judgment on the pleadings as to Plaintiffs' RICO claims and as to Plaintiffs' spoliation claim are granted, and Plaintiff–Growers' motion to amend is denied without prejudice at this time. In combination with the Court's May 8, 2001 Order, all of the counts in Plaintiffs' First Amended Complaint in Case No. 98–2256–Civ–Gold are dismissed and judgment on the pleadings is awarded in favor of DuPont and against the Plaintiffs. Thus, this order constitutes a final decision in Case No. 98–2256–Civ–Gold, and it is subject to appeal pursuant to 28 U.S.C. § 1291.

Wherefore, it is

**ORDERED AND ADJUDGED** that DuPont's Motion for Judgment on the Pleadings As to Plaintiffs' RICO Claims, filed on May 9, 2001, is GRANTED. Counts Six and Seven of the First Amended Complaint are dismissed, and judgment is awarded in favor of DuPont on those counts. It is further

**ORDERED AND ADJUDGED** that DuPont's Motion for Judgment on the Pleadings As to Plaintiffs' Spoliation Claim, filed on May 9, 2001, is GRANTED. Count Twelve of the First Amended Complaint is dismissed, and judgment is awarded in favor of DuPont on that count. It is further

**ORDERED AND ADJUDGED** that Plaintiff–Growers' Motion to Amend their First Amended Complaint, filed on August 1, 2001, is denied in Case No. 98–2256–Civ–Gold for lack of jurisdiction and denied without prejudice in the remaining consolidated Benlate cases. It is further

**ORDERED AND ADJUDGED** that resolution of DuPont's Motion to Consolidate Cases for Common Issues Trial, filed on October 10, 2000, is deferred pending a ruling by the Eleventh Circuit Court of Appeals on the Plaintiff's interlocutory appeal of the Court's orders on DuPont's motions for judgment on the pleadings. The Clerk of Court shall remove the motion from the pending motions list at this time, and the Court will reconsider the motion to consolidate for common issues trial upon motion of the parties.